1   ROBERT W. THOMPSON, Esq. (SBN 106411)
    KATHLEEN M. HARTMAN, Esq. (SBN 219934)
2   JESSICA LULLI, Esq. (SBN 263668)
    **CALLAHAN, THOMPSON, SHERMAN**
3   **& CAUDILL, LLP**
4   2601 Main Street, Suite 800
    Irvine, California 92614
5   Tel    :      (949)  261-2872
    Fax    :      (949)  261-6060
6   Email  :      rthompson@ctsclaw.com
                  khartman@ctsclaw.com
7                 jlulli@ctsclaw.com

8   Attorneys for Plaintiff,
    **JEANNETTE CLARK, individually and**
9   **on behalf of those similarly situated**

10

11                  **UNITED STATES DISTRICT COURT**

12                **SOUTHERN DISTRICT OF CALIFORNIA**

13

14  JEANNETTE CLARK, individually and      ) Case No.:  3:13-cv-0485-JM-JMA
    on behalf of those similarly situated,  )
15                                          ) Judge:  Jeffrey T. Miller
                                            ) Complaint Filed:  12/10/2012
16              Plaintiff,                   )
                                            ) **CLASS ACTION**
17       vs.                                 )
                                            ) **SECOND AMENDED COMPLAINT**
18  LG ELECTRONICS U.S.A., INC.             ) **FOR DAMAGES FOR:**
19                                          )
                                            ) **(1) Violation Of Consumer Legal**
20              Defendant.                   )     **Remedies Act**
                                            ) **(2) Unlawful Business Practices in**
21                                          )     **Violation of California Business &**
                                            )     **Professions Code §17200,** *et. seq.*
22                                          ) **(3) False & Misleading Advertising In**
                                            )     **Violation of California Business &**
23                                          )     **Professions Code §17500,** *et. seq.*
                                            ) **(4) Breach of Express Warranty**
24                                          ) **(5) Breach of Consumer Warranty Act**
                                            )     **California Civil Code §1790,** *et, seq.*
25                                          ) **(6) Violations Of The Magnuson-Moss**
                                            )     **Warranty Act**
26                                          )
27                                          )
                                            )
28  _____       ) **JURY TRIAL DEMANDED**
                                            - 1 -

1    Plaintiff JEANNETTE CLARK, (hereinafter "Plaintiff"), on behalf of herself, and

2    on behalf of all other similarly situated persons, allege the following facts and claims:

3    1.    This consumer class action arises out of Defendant LG ELECTRONICS

4    U.S.A, INC.'s ("Defendant") misrepresentations through omission and failure to honor

5    warranties with respect to Defendant's LG's refrigerator Model No. LFX31925ST,

6    refrigerators with its Slim SpacePlus™ Ice System, and/or its Smart Cooling Plus

7    System.

8                              **JURISDICTION AND VENUE**

9    2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)

10   and 18 U.S.C. § 1965.  This Court has supplemental jurisdiction over Plaintiff's state law

11   claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Plaintiffs'

12   federal claims that they form part of the same case or controversy between the parties.

13   3.    Defendant removed this action from State Court to Federal Court.

14                                  **THE PARTIES**

15   4.    Plaintiff Jeannette Clark is, and at all material time was, a citizen of

16   California and resident in the county of San Diego, California.

17   5.    Defendant LG Electronics U.S.A., Inc. is a Delaware corporation with

18   corporate offices at 1000 Sylvan Ave, Englewood Cliffs, NJ, 07632.  Defendant

19   maintains a website at http://www.LG.com/us.

20                          **STATUTES OF LIMITATIONS**

21   6.    Any applicable statutes of limitation have been tolled by Defendant's

22   continuing, knowing and active concealment of the facts alleged herein.  Defendant has

23   concealed material information from Plaintiff and the Class that is essential to the pursuit

24   of their claims, despite Plaintiff's and the Classes' due diligence.

25                                **INTRODUCTION**

26   7.    Defendant is in the business of manufacturing, producing, distributing,

27   and/or selling refrigerators throughout the United States under the brand name LG

28   Electronics.

                                        - 2 -

8.      Defendant manufactured, produced and/or distributed refrigerators for sale by its network of authorized dealers including several leading retailers in the United States, such as Home Depot, Best Buy, APT, Buy.com, PC Richard & Son, and other large retail chains, as well as through independently owned distributors.

9.      On or around the beginning of October 2011, Plaintiff purchased an LG refrigerator, Model No. LFX31925ST,[1] from Home Depot located in San Diego, California.  Plaintiff paid approximately $3,000 for the refrigerator.  Plaintiff used the refrigerator in her home for its intended purpose and in a manner consistent with its intended use.

10.     The refrigerator has a LG Slim SpacePlus™ Ice System ("Ice System"). The Ice System is located in the interior portion of the door of the refrigerator, giving the refrigerator more storage capacity than other refrigerators.  The Ice System makes and stores ice and has an external automatic ice dispenser that allows the consumer to obtain ice without opening the refrigerator door.   Plaintiff saw this feature and liked that it provided an in-door automatic ice dispenser without losing storage capacity.

11.     The refrigerator also has an LG Smart Cooling Plus System ("SCP").  The SCP is "designed to monitor and maintain conditions to help keep food fresh."  On the date that Plaintiff purchased the refrigerator, the sales person at Home Depot pointed out that one of the features of the refrigerator was that it had different temperature zones in the refrigerator that could be regulated based on what was being stored in the temperature zone.  Some of the zones identified were a drawer for meat, a drawer for vegetables, and a drawer for buffet platters.  This was one of the features about the refrigerator that Plaintiff liked because it was supposed to help keep food fresh longer.  As stated by Defendant in its advertising, "[t]he Linear Compressor and Dual Evaporators [that are part of the SCP] react quickly to humidity and temperature levels and help keep your

---

[1] The term "Model" will refer to the LG's Model No. LFX31925ST and not just the refrigerator the Plaintiff purchased.

SECOND AMENDED COMPLAINT

food fresher, longer. Meanwhile, strategically-placed vents in every section help to surround your food with cool, fresh air no matter where you put it."

12.     Within one month of owning and operating the refrigerator under normal household conditions, and as recommended by Defendant, the refrigerator began to have problems.  The Ice System would repeatedly clog and become non-operational.   When Plaintiff contacted Defendant about the problem she was told that in order to stop the clogs she would have to empty the ice tray every day.  The refrigerator would also get various error messages and sometimes it would simply stop working.  When this happened, Plaintiff was instructed by Defendant to unplug the refrigerator for at least 15 minutes and then plug it back in.  Plaintiff was told by Defendant that this would reboot the refrigerator's control board.  Sometimes Plaintiff would have to perform this unplugging, waiting, and re-plugging ritual multiple times to try to reboot the control board.  When the refrigerator was unplugged and when it stopped working, the food in the refrigerator was not being cooled by the SCP.  Because the food was not being cooled, it would spoil and ice would melt and leak onto the floor.

13.     The plug for the refrigerator is located on the back of the refrigerator so it was not an easy task to unplug the refrigerator.  The refrigerator was heavy and it had to be moved out from the cupboard space and away from the wall and then moved back when it started up again.

14.     Defendant provides an express warranty for workmanship and materials. Defendant contracts with third party repair companies to provide repairs to consumers under the express warranty.   Defendant pays the third party repair companies a one-time amount regardless how many times the refrigerators have to be repaired.  A consumer will contact Defendant who will direct them to the third party repair company servicing the consumer's location.

## **CLASS ALLEGATIONS**

15.     Plaintiff brings this action on behalf of herself and all others similarly situated as a class action pursuant to Rule 23(a)(1) and (3) and Civil Code §1781.

16.     Plaintiff seeks to represent the following classes:

a.   All persons in California who purchased an LG refrigerator for home use with the LG Smart Cooling Plus System (California SCP Class).

b.   All persons in California who purchased an LG refrigerator for home use with the LG Slim SpacePlus™ Ice System (California Ice System Class).

c.   All persons in California who purchased an LG refrigerator Model No. LFX31925ST (California Model Class).

d.   All persons in the United States who purchased an LG refrigerator for home use with the LG Smart Cooling Plus System (Nationwide SCP Class).

e.   All persons in the United States who purchased an LG refrigerator for home use with the LG Slim SpacePlus™ Ice System (Nationwide Ice System Class).

f.   All persons in the United States who purchased an LG refrigerator Model No. LFX31925ST (Nationwide Model Class).

17.     The California SCP Class, the California Ice System Class, the California Model Class, the Nationwide SCP Class, the Nationwide Ice System Class, and the Nationwide Model Class are collectively referred to as the "Classes."

18.     The California SCP Class, the California Ice System Class, and the California Model Class are collectively referred to as the "California Classes."

19.     Excluded from the Classes are Defendant, any entity in which Defendant has a controlling interest, and any of the Defendant's subsidiaries, affiliates, and officers, directors or employees and any legal representative, heir, successor, or assigns of Defendant.

20.     The members of the Classes are so numerous that joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the court.  While the exact number of members of the Classes are unknown to

Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes, and on that basis alleges, that thousands of persons are members of the Classes.

21.     There is a well-defined commonality of interest in questions of fact involving and affecting Plaintiff and the Classes which includes, without limitation:

     a.  Whether Defendant made material omissions regarding extraordinary measures a consumer would need to take to keep the SCP, Ice System, and Model operational in order to make them fit for the ordinary purposes for which they were intended and used;

     b.  Whether Defendant knew and/or recklessly disregarded the fact that the extraordinary measures were required to keep the SCP, Ice System, and Model operational;

     c.  Whether Defendant engaged in unfair competition, unconscionable acts or practices, and unfair or deceptive acts or practices in connection with the sale of the SCP, Ice System, and Model;

     d.  Whether Defendant violated the consumer protection statutes in California;

     e.  Whether Defendant breached its implied warranties;

     f.  Whether Defendant breached express written and/or representative warranties;

     g.  Whether Defendant has been unjustly enriched;

     h.  Whether Plaintiff and the Classes have suffered damages as a result of Defendant's conduct, and, if so, the appropriate amount thereof; and

     i.  Whether as a result of Defendant's conduct, Plaintiff and the Classes are entitled to equitable relief or other relief, and, if so, the nature of such relief.

22.     The claims of Plaintiff alleged herein are typical of those claims by members of the Classes and the relief sought is typical of the relief which would be sought by members of the Classes.

23.     Plaintiff and her counsel will fairly and adequately represent and protect the interests of all members of the Classes.

24.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of rights of members of the Classes and the disposition of their interest through actions to which they were not parties.

25.     A single class action is superior to numerous individual actions as a means of adjudicating those claims.

### FIRST CAUSE OF ACTION

(By Plaintiff, individually and on behalf of the California Classes against Defendant)

**Violations of the California Consumer Legal Remedies Act**

26.     Plaintiff hereby restates, re-alleges, and incorporates by reference herein the paragraphs stated above in this Second Amended Complaint as though fully set forth herein.

27.     Plaintiff, individually and on behalf of all similarly situated California Class members, and the general public seek injunctive relief and recovery of damages for Defendant's violation of the California Consumer Legal Remedies Act, California Civil Code §§1750, *et seq.*

28.     The CLRA applies to Defendant's actions and conduct described herein because it extends to transactions that are intended to result, or which have resulted, in the sale of goods to consumers for personal, family or household use.

29.     Refrigerators constitute "goods" within the meaning of Civil Code §1761(a).

30.     Defendant constitutes a "person" within the meaning of Civil Code §1761(c).

31.     Plaintiff and the California Class are "consumers" within the meaning of the Civil Code §1761(d).

- 7 -

32.     Defendant's conduct as alleged herein constitutes a "transaction" within the meaning of Civil Code §1761(e).

33.     The CLRA provides in relevant part that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction and intended to result or which results in the sale or lease of goods…to any consumer are unlawful: (5) Representing that goods… have… characteristics, uses, benefits…which they do not have; …. (7) Representing that goods…are of a particular standard, quality or grade…if they are of another;… and (9) Advertising goods… with intent not to sell them as advertised."  Civil Code §§1770(a)(5), (7), and (9).

34.     Civil Code §1780(a)(2) permits any court of competent jurisdiction to enjoin practices that violate Civil Code §1770.

35.     On December 7, 2012, Plaintiff sent a letter to Defendant demanding within 30 days that Defendant correct, repair, replace or otherwise rectify the deceptive practices complained herein for the entire California Class pursuant to Civil Code §1770. Defendant has failed to do so.  Therefore, in addition to injunctive relief, Plaintiff seeks damages pursuant to Civil Code §1782(d) on behalf of herself and the California Classes.

36.     Under Civil Code §1780(d), Plaintiff may also recover attorneys' fees and costs according to proof at time of trial.

**Allegations for the California SCP Class**

37.     The SCP stops regulating the temperature in the different temperature zones of the refrigerator.  When this happens, the food begins to spoil and ice melts and leaks out of the refrigerator.   In order to restart the SCP, Plaintiff was regularly required to unplug the refrigerator, wait for at least 15 minutes, and then re-plug in the refrigerator.

38.     At no time prior to the purchase of the refrigerator was Plaintiff told that in order to keep the SCP operational, she would need to repeatedly unplug the refrigerator for at least 15 minutes.  Omission of this critical information was misleading and was

- 8 -

1   done for the purpose of inducing Plaintiff and the California SCP Class into purchasing

2   Defendant's refrigerators.

3        39.    Unplugging the refrigerator and re-plugging it in would only provide a

4   temporary fix.  This exercise would need to be performed on a regular basis.

5        40.    Had Plaintiff known she would have to continually keep unplugging and re-

6   plugging in the refrigerator to keep the SCP system operational, she would not have

7   purchased the refrigerator.

8        41.    A reasonable consumer would want to know that this action was necessary

9   in order to keep the SCP operational.  This is especially true because the refrigerator fell

10  at the upper end of the price spectrum.

11       42.    Defendant had multiple opportunities to disclose the extraordinary

12  measures necessary to keep the SCP operational.  This includes, but is not limited to,

13  disclosure at the retail display of refrigerators with the SCP, on its websites, and at the

14  point of purchase.

15       43.    Plaintiff and the California SCP Class reasonably relied on the

16  representation that the refrigerator had the capability to regulate the temperature in

17  various zones of the refrigerator and that this function would help keep food fresh longer

18  than other refrigerators without the SCP technology.  In actuality, the SCP stops working

19  completely or fails to regulate the temperature in the refrigerator because it causes food to

20  defrost, ice to melt, and the refrigerator to become warm.

21       44.    Defendant knew that the SCP did not work as represented and did not have

22  the qualities that were represented when it sold the product to Plaintiff and the California

23  SCP Class.  Defendant has a phone number for customers to call to report problems.

24  Customers had previously contacted Defendant to report problems with the cooling of the

25  refrigerator because when Plaintiff called to report the problem she was told the fix was

26  to unplug the refrigerator in order to reboot it.  This indicates Defendant was aware of the

27  problem prior to Plaintiff's call and had developed a "fix."   Defendant's knowledge was

28  further confirmed when Defendant sent out a service technician from Browne's

- 9 -

1   Appliances to perform warranty repairs to the refrigerator.  The service technician, who

2   was hired by Defendant to perform warranty repairs and indicated to Plaintiff that he had

3   performed many other repairs on Defendant's products, explained that the types of

4   problems Plaintiff was experiencing were common to Defendant's refrigerators.

5          45.     Defendant also knew of the problem with the SCP because it tracks

6   problems with its products.   When a customer calls Defendant to report a problem, a

7   claim number is generated.  If a service technician is sent to perform repairs, the service

8   technician must track by claim number the part and repairs performed.  Defendant must

9   keep track of these claim numbers and the repairs performed as part of its ability to

10  comply with its No Lemon Guarantee provided to members of the California Classes.

11  Defendant referred to prior claims Plaintiff had made during their conversations so it was

12  clear that Defendant kept track of calls it received.

13         46.     Plaintiff is also informed and believes that Defendant knew of the problem

14  with the SCP because its warranty service providers must report to Defendant the types of

15  problems encountered and obtain necessary equipment, instruction, and training to repair

16  Defendant's products.

17         47.     Plaintiff is also informed and believes that Defendant knew of the problem

18  with the SCP System because LG customers called its customer service line to complain.

19  This is evidenced by numerous complaints lodged on various websites which document

20  LG customers repeated calls to LG to complain about the SCP.  For example, on the

21  website consumeraffairs.com, 938 LG customers have posted reviews about their LG

22  refrigerators, with 81% giving a one-star (out of five) rating; 16% giving it a two-star

23  rating – and only one percent providing either a 3, 4 or 5-star rating.  Multiple posts by

24  LG customers evidence their repeated calls to LG and LG's refusal or inability to repair

25  the problems.  For example:

| http://www.consumeraffairs.com /homeowners/lg_refrigerator.html | "Bought new bottom freezer french door refrigerator in February 2011, now in December |
|---|---|

28

| | |
|---|---|
| ?page=6<br><br>Mary of Bethesda, MD, posted the<br>following on January 10, 2012: | 2011 fridge won't fully cool and water is leaking at the back left and from the bottom of the fridge. Called service at LG and they gave me a company who will fix. Four days later they called and said they do not service the area. Then LG gave me another company very far away and they didn't answer as they were on vacation. Finally after about 8 days, LG sent out someone who worked directly for them and he only fixed the filter and said everything else was fine.<br><br>The temperature (noted by two new thermometers I have bought) inside was 42, despite the thermostat being set at 34! This man said it was the food that was supposed to be 34 not the air temperature! He said we needed to get a special thermometer to test the food temperature. That was crazy. The food was slowly going bad again. I have moved food in and out of the fridge because I have been told it needs to be empty for fixing and then told I could put food back in after it was fixed (it wasn't). This has happened three times. It is now three weeks later and while the water is no longer leaking, the fridge part is still not cooling properly. Their repair man says it is fixed. |

SECOND AMENDED COMPLAINT

| | |
|---|---|
| | Very interesting that the warranty is going to be up in a few weeks. LG says someone will come out in three days. Why is it that they have no contract with fixer companies in my urban area (DC)? That is because the companies say LG pays very little to these companies and they don't want to work for them doing free warranty work. This is unacceptable. I have lost 100's of dollars of food over Christmas and New Year. I want all of us to file a class action lawsuit. I am truly fed up." |
| http://www.amazon.com/ LG-LFX31925ST-Stainless-French-Refrigerator/product-reviews/B0052QXY5K/ref=dp_top_cm_cr_acr_txt?ie=UTF8&showViewpoints=1<br><br>On July 1, 2012, Stephen D. Hoschler wrote: | "We had problems with the refrigerator from day 1. The ice and water would stop working completely and produce would freeze. LG service first advised us to turn the unit off and then back on to reset it...trouble is THERE IS NO ON/OFF SWITCH. We had to pull the fridge out from the wall to unplug it. That helped for about an hour, then it went down again. Service came out and ordered all new electronics for the icemaker saying it was a KNOWN DEFECT. If you set the controls for the freezer for below zero (which you are supposed to be able to do) the unit stops working. LG solution: Don't set it below zero. It makes VERY little ice...plan on buying ice for parties (or |

SECOND AMENDED COMPLAINT

|  | weekends). LG is amazingly dismissive of these problems. BTW, LG won't allow posting negative reviews on their website." |
|---|---|

48.     Defendant intended Plaintiff and the California SCP Class to rely on its representations that the SCP would regulate the temperature in the various zones of its refrigerators and keep the refrigerator cool without having to take extraordinary measures.  One of the reasons Plaintiff purchased the refrigerator with the SCP technology was because the temperature variations it offered were supposed to keep food fresh longer than other refrigerators without the SCP technology.  Defendant's own advertising claims the SCP keeps food fresh longer and that it is "cutting edge technology."  Defendant's advertising indicates that it is attempting to distinguish itself from other refrigerators and induce consumers to purchase its product by offering a new technology that other refrigerators do not have.

49.     Plaintiff and the California SCP Class have suffered and continue to suffer injury in fact and have lost money as a result of Defendant's omission in that they have overpaid for the refrigerators with the SCP, incurred additional operating expenses and/or would not have bought the refrigerators with the SCP had the Defendant disclosed that the SCP was unable to perform its essential function of regulating the temperature in the refrigerator.  Further, when the SCP would stop functioning, frozen items and ice would melt.  The water would leak out of the refrigerator onto the floor.  This created a safety hazard and damage to the floor.  Food would also begin to spoil and would spoil. Plaintiff was required to throw out a significant amount of food, which caused monetary loss.  Plaintiff was also not able to use a refrigerator that she bought for approximately $3,000 for extended periods of time.  Plaintiff is informed and believes that other members of the California SCP Class suffered similar injuries.

SECOND AMENDED COMPLAINT

1    50.    Defendant's actions were intended to harm Plaintiff and the California SCP

2  Class and were done with malice and conscious disregarding of Plaintiff and the

3  California SCP Class's rights as stated herein.

4    51.    On behalf of herself and the California SCP Class, Plaintiff requests an

5  order enjoining the methods, acts, or practices; restitution; attorney's fees and costs;

6  actual damages; punitive damages; and any other relief that the Court deems proper.

7  **Allegations for the Ice System Class**

8    52.    Ice gets clogged in the ice chute of the refrigerators and the Ice System

9  stops working.  Plaintiff was told by Defendant that to prevent this she would have to

10  regularly empty the ice tray.

11    53.    At no time prior to the purchase of the refrigerator was Plaintiff told that in

12  order to keep the Ice System operational she would need to regularly empty the ice tray.

13  Plaintiff had never before been required to empty the ice tray in her previous refrigerators

14  in order to keep the icemaker operational. Had Plaintiff know this action was required to

15  keep the Ice System operational she would not have purchased the refrigerator.

16    54.    A reasonable consumer would also want to know that they would need to

17  regularly empty the ice tray, in what was supposed to be an automated icemaker, in order

18  to keep the Ice System operational.  This is especially true because the refrigerator fell at

19  the upper end of the price spectrum and people who buy a refrigerator with an ice maker

20  reasonably want it to make ice and have ice available for use without having to regularly

21  empty the icemaker or risk it clogging.

22    55.    Defendant had multiple opportunities to disclose the extraordinary

23  measures necessary to keep the Ice System operational.  This includes, but is not limited

24  to, disclosure at the retail display of refrigerators with the Ice System, on its websites, and

25  at the point of purchase.

26    56.    Plaintiff and the California Ice System Class reasonably relied on the

27  representation that the Ice System would function as an ice maker that would make and

28

- 14 -

dispense ice.  In actuality, however, the Ice System would clog and the consumer would need to regularly dump the ice that it made in order to keep it operational.

57.     Defendant was aware of the extraordinary efforts that were required to keep the Ice System operational but failed to disclose these facts to Plaintiff and the California Ice System Class.  Defendant's knowledge is based on the following complaints on Defendant's own website that were made prior to Plaintiff's purchase of the refrigerator:

| | |
|---|---|
| August 13, 2011<br>User Name: BuddyBrou<br>http://www.lg.com/us/refrigerators/lg-LFX31925ST-french-3-door-refrigerator | "This fridge is HUGE. We love all of the extra space. However, we've had problems with the ice dispenser in the door from the first day the fridge was delivered. And we've been waiting weeks for repairs. Also, the ice maker does not store much ice, which is a problem for our large family. Finally, make sure you note that the water dispenser in the door is NOT in the same location as the ice dispenser." |
| August 19, 2011<br>User Name: dcp<br>http://www.lg.com/us/refrigerators/lg-LFX31925ST-french-3-door-refrigerator | "Purchased this refrigerator end of June- now, mid August. Refrigerator section is awesome. Ice maker capabilities are too small for this size refrig.. Also, I currently have a service call arranged because the ice through the door feature is clogging on a daily basis. So, the ice that it does make stays clogged in the door. Why put a poorly designed small ice maker in the largest capacity free standing refrig currently on the market?" |
| October 1, 2011<br>User Name: varway<br>http://www.lg.com/us/refriger | "This is a great refrigerator for a foodie. Love the wide space inside, love the lighting, love the freezer below. Love the ice maker. |

- 15 -

| ators/lg-LFX31925ST-french-3-door-refrigerator | But, slightly more than two months since we got it, the repair guy was here on Thursday and said he was ordering another freezer fan for us. That ice maker that I love so much? Not working right now while we wait for the part to come in and for him to come back to replace it." |
|---|---|

58.   It was further confirmed that Defendant knew of the problem with the Ice System when the service technician that Defendant sent from  Browne's Appliances to perform warranty repairs to the refrigerator said that Plaintiff's problems with her refrigerator are common.

59.   Defendant also knew of the problem with the Ice System because it hired warranty service providers to repair its products.   When a customer calls Defendant to report a problem, a claim number is generated.  If a service technician is sent to perform repairs, the service technician must track by claim number the part and repairs performed. Defendant must keep track of these claim numbers and the repairs performed as part of its ability to comply with its No Lemon Guarantee provided to members of the California Classes.  Defendant referred to prior claims Plaintiff had made during their conversations so it was clear that Defendant kept track of calls it received.

60.   Plaintiff is also informed and believes that Defendant knew of the problem with the Ice System because its warranty service providers must report to Defendant the types of problems encountered and obtain necessary equipment, instruction, and training to repair Defendant's products.

61.   Plaintiff is also informed and believes that Defendant knew of the problem with the Ice System because LG customers called its customer service line to complain. This is evidenced by numerous complaints lodged on various websites which document LG customers repeated calls to LG to complain about the Ice System.  For example, on

the website consumeraffairs.com, 938 LG customers have posted reviews about their LG refrigerators, with 81% giving a one-star (out of five) rating; 16% giving it a two-star rating – and only one percent providing either a 3, 4 or 5-star rating.  Multiple posts by LG customers evidence their repeated calls to LG and LG's refusal or inability to repair the problems.  Below are some examples of customer complaints:

| http://www.consumeraffairs.com/homeowners/lg_refrigerator.html?page=6<br>George of Martinez, GA, posted on February 27, 2012 | "I bought a $3000 LG LMX3195ST refrigerator on 07/30/2011. It has been broken from day 1. I have fifteen complaints filed and documented with LG. They have replaced warped door seals. They have unthawed it twice. They have been out to disassemble/reassemble it from where MEI repaired it incorrectly and they replaced the motherboard. The unit still has error codes and the ice maker gets stuck in the on position. The first repair company, MEI, was horrible. The company had no diagnostic tools and where a no show, no call. The second company, A&E, I thought was pretty good and well equipped, but now stated by LG will not return their calls. After listening to the guy from MEI complain the whole time he was here about how LG was underpaying him, I would be willing to bet that there might be some kind of issues in this area. LG has not been able to call me and notify me of the trouble finding a repair center; instead I have waited as long as 13 days before I finally call them and just repeat the cycle. I refuse to give up and I will fight LG to the |
|---|---|

| | end!" |
|---|---|
| http://www.consumeraffairs.com/homeowners/lg_refrigerator.html?page=6<br>Margaret of Stuart FL, posted on Feb. 10, 2012 | "I have owned my LG French door refrigerator for 18 months and have had two problems with the icemaker. The first problem happened during the warranty and was covered. The ice bin plastic broke off and plastic bits were dispensed with ice. The second problem is that the icemaker is completely broken and needs to be replaced. I used the "live chat" on the web site and they walked me through a number of steps, but in the end, it needs to be replaced. It's over $300 after owning it for 18 months. I am not happy. My last refrigerator lasted 20 years with not one repair." |

62.     Defendant intended Plaintiff and the California Ice System Class to rely on its representations that the Ice System would act like an ice maker and make and dispense ice without having to take extraordinary measures.  One of the reasons Plaintiff and the California Ice System Class purchased refrigerators with the Ice System technology was because they could have an ice maker that dispenses ice without the ice maker taking up valuable storage space.

63.     Plaintiff and the California Ice System Class have suffered and continue to suffer injury in fact and have lost money as a result of Defendant's omission in that they have overpaid for the refrigerators with the Ice System, incurred additional operating expenses, and/or would not have bought the refrigerators with the Ice System had the Defendant disclosed the Ice System was unable to perform its essential function making and dispensing ice.  Further, when the Ice System would clog it would sometimes cause the motor to burn out and the refrigerator to become non-operational.  This would cause

SECOND AMENDED COMPLAINT

1  food to defrost and ice to melt.  Water would leak out of the refrigerator onto the floor.

2  This created a safety hazard and damage to the floor.  Food would also begin to spoil.

3  Plaintiff was required to throw out a significant amount of food, which caused monetary

4  loss.  Plaintiff was also not able to use a refrigerator that she bought for approximately

5  $3,000.  Plaintiff is informed and believes that other members of the California Ice

6  System Class suffered similar injuries.

7       64.    Defendant's actions were intended to harm Plaintiff and the California Ice

8  System Class and were done with malice and conscious disregarding of Plaintiff and the

9  California Ice System Class's rights as alleged herein.

10      65.    On behalf of herself and the California Ice System Class, Plaintiff requests

11 an order enjoining the methods, acts, or practices; restitution; attorney's fees and costs;

12 actual damages; punitive damages; and any other relief that the Court deems proper.

13                          **California Model Class**

14      66.    The refrigerator Model No. LFX31925ST ("Model") does not operate as

15 intended or advertised.  The Model does not continuously refrigerate products nor does it

16 make or dispense ice properly without Plaintiff taking extraordinary steps to keep it

17 operational.  Plaintiff was told by Defendant to unplug the refrigerator for at least 15

18 minutes and empty the ice tray.   Defendant also sent a service technician out to repair the

19 problems with the refrigerator on numerous occasions.

20      67.    At no time prior to the purchase of Model was Plaintiff told of the

21 extraordinary measures necessary to keep the refrigerator operating properly.  Omission

22 of this critical information was misleading and was done for the purpose of inducing

23 Plaintiff and the California Model Class into purchasing the Model.

24      68.    Had Plaintiff and the California Model Class known they would have to

25 continually keep unplugging and re-plugging in the Model, dumping the ice tray, and

26 having multiple service calls to keep Model operating they would not have purchased the

27 refrigerator.

28

SECOND AMENDED COMPLAINT

eg

69.     A reasonable consumer would want to know that these actions were necessary in order to keep the Model operational.  This is especially true because the refrigerator fell at the upper end of the price spectrum.

70.     Defendant had multiple opportunities to disclose the extraordinary measures necessary to keep the Model operational.  This includes, but is not limited to, disclosure at the retail display of the Model, on its websites, and at the point of purchase.

71.     Plaintiff and the California Model Class reasonably relied on the representation that the Model would act as a refrigerator and would make and dispense ice.  In actuality, however, the Model does not continuously refrigerate products nor does it make and dispense ice properly.

72.     Defendant knew that the Model did not work properly when it sold the Model to Plaintiff.  Defendant was aware of customer complaints about the refrigerator from its own website.  It keeps track of these complaints by assigning claim numbers.  Defendant knew of the "fix" to the Model prior to Plaintiff's first complaint.  The service technician authorized by Defendant to perform warranty repairs also said that the problems Plaintiff was having were common.

73.     Defendant also knew of the problem with the Model because it hired warranty service providers to repair its products.   When a customer calls Defendant to report a problem, a claim number is generated.  If a service technician is sent to perform repairs, the service technician must track by claim number the part and repairs performed.  Defendant must keep track of these claim numbers and the repairs performed as part of its ability to comply with its No Lemon Guarantee provided to members of the California Classes.  Defendant referred to prior claims Plaintiff had made during their conversations so it was clear that Defendant kept track of calls it received.

74.     Plaintiff is also informed and believes that Defendant knew of the problem with the Model because its warranty service providers must report to Defendant the types of problems encountered and obtain necessary equipment, instruction, and training to repair Defendant's products.

SECOND AMENDED COMPLAINT

75.     Plaintiff is also informed and believes that Defendant knew of the problem with the Model because LG customers called its customer service line to complain.  This is evidenced by numerous complaints lodged on various websites which document LG customers' repeated calls to LG to complain about the LFX31925ST Model.  For example, on the website amazon.com, LG customers have posted reviews about their ongoing problems with the Model and LG's refusal or inability to repair the problems.  Below are some examples of customer complaints:

| | |
|---|---|
| http://www.amazon.com/ LG-LFX31925ST-Stainless-French-Refrigerator/product-reviews/B0052QXY5K/ref=dp_top_ cm_cr_acr_txt?ie= UTF8&showViewpoints=1 On November 29, 2012, consumer Jennifer Gursahaney of Garnet Valley, Pennsylvania wrote about the LG LFX31925ST 30.7 Cu. Ft. Stainless Steel French Door Refrigerator - Energy Star: | "I bought this fridge in May 2011 when it had just entered the market and was only available at HH Gregg. I was so excited by the capacity since my family of 5 eats and I cook A LOT! It was so pretty, shiny, and new while not taking up any more space than the 24 cu ft it replaced. In the 1st month it started making a lot of noise. Serviceman replaced the seal and reset the freezer door on the track. As soon as he left, food in freezer was covered in snow and again the noise. Serviceman replaced the board and fan motor. 2 weeks later, yep, the noise! After 5 service calls for the same thing, LG said I was out of warranty since it was a year old. Made a one-time courtesy to fix it, serviceman came out Nov 2012 with some new board that was the fix for my issue. Yep, you guessed it, right in the middle of Thanksgiving dinner...THE NOISE!!! It sounded like a jackhammer! I'm so beyond angry at this time, I will not be buying another |

SECOND AMENDED COMPLAINT

| | |
|---|---|
| | LG fridge again. You can find better ways to spend $3K than this fridge, trust me!" |
| http://www.amazon.com/ LG-LFX31925ST-Stainless-French-Refrigerator/product-reviews/B0052QXY5K/ref=dp_top_ cm_cr_acr_txt?ie= UTF8&showViewpoints=1 On July 12, 2012, TF wrote about the LG LFX 31925ST refrigerator: | "I have this unit for about a year. Purchased from HomeDepot in California. It is a very large refrigerator with plenty of space and some good design, maxing storage space. The French doors allow for great access and the shelvings [sic] on the doors allow for great storage while the lower drawers can still be pulled out when the doors open at 90 degrees ( great if the unit placed near a wall on either side) However, the unit make[s] load noises. In one year the ice maker stopped working twice, a fan was replaced once, the French doors "closing bar" broke off once and the water indicator peeled off completely. [I]t is working well now after the fan was replaced. For the price paid, this unit should have been made better, I would not recommend buying it. If you do, get a good warranty coverage, you might need it. TF"  Addition AUG 2012: "The unit is back making noise, the freezer portion stopped working and there is a" clicking" |

| | sounds as if a metal fan, at high speed, is striking something. The whole front digital control panel was replaced today, I am not sure why, but the technician believe this is the problem. I hope this is the last review about this unit; I would love to see it working well. TF" |
|---|---|
| http://www.amazon.com/ LG-LFX31925ST-Stainless-French-Refrigerator/product-reviews/B0052QXY5K/ref=dp_top_ cm_cr_acr_txt?ie= UTF8&showViewpoints=1 On April 1, 2012, Carroll A. Simmons wrote about the LG LFX31925ST 30.7 Cu. Ft. Stainless Steel French Door Refrigerator - Energy Star: | "We bought this refrigerator in July 2011 and it has broken twice now. First the ice maker and now a freezer full of food. I just threw out hundreds of dollars worth of food. The customer service at LG is terrible. I wish I had never bought this refrigerator." |

76.     Defendant intended Plaintiff and the California Model Class to rely on its representations that the Model would actually function like a refrigerator without having to take extraordinary measures.  Defendant calls the Model a refrigerator, the refrigerator is displayed with other refrigerators, Plaintiff was told at the time of purchase that the refrigerator had a special feature for regulating temperature, and that it has an ice maker that makes, stores, and dispenses ice. The Model itself looks like it has an ice maker that makes, stores, and dispenses ice.

77.     Plaintiff and the California Model Class have suffered and continue to suffer injury in fact and have lost money as a result of Defendant's omission in that they

have overpaid for the Model, incurred additional operating expenses and/or would not have bought the Model had the Defendant disclosed the Model was unable to perform its essential function of refrigeration and making, storing, and dispensing ice.  When the Model stopped functioning, frozen items and ice would melt.  The water would leak out of the refrigerator onto the floor.  This created a safety hazard and damage to the floor. Food would also begin to spoil.  Plaintiff was required to throw out a significant amount of food, which caused monetary loss.  Plaintiff was also not able to use a refrigerator that she bought for approximately $3,000.  Plaintiff is informed and believes that other members of the California Model Class suffered similar injuries.

78. Defendant's actions were intended to harm Plaintiff and the California Model Class and were done with malice and conscious disregarding of Plaintiff and the California Model Class's rights as stated herein.

79. On behalf of herself and the California Model Class, Plaintiff requests an order enjoining the methods, acts, or practices; restitution; attorney's fees and costs; actual damages; punitive damages; and any other relief that the Court deems proper.

## SECOND CAUSE OF ACTION

(By Plaintiff, individually and on behalf of the California Classes)

**Violations of Cal. Bus. & Prof. Code §17200,** *et seq.*

80. Plaintiff hereby restates, re-alleges, and incorporates by reference herein the paragraphs stated above in this Second Amended Complaint as though fully set forth herein.

81. Plaintiff, individually and on behalf of all similarly situated California Class members, and the general public, brings this cause of action pursuant to California Business and Professions Code §17200, *et seq.*

82. The Unfair Business Practices Act defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.  California Bus. & Prof. Code §§17200 and 17500, *et seq.*  The Act also provides for injunctive relief and restitution for violations.

- 24 -

83.     Defendant has engaged in unlawful, unfair and/or fraudulent business acts and practices as set forth above.

84.     Defendant's conduct constitutes unfair business acts and practices because Defendant's practices as described herein have deceived and/or were likely to deceive Plaintiff and the California Class, and other members of the consuming public.  At no time prior to the purchase of SCP, Ice System, or Model was Plaintiff or the California Classes told that extraordinary measures were required to keep the products operational. Failure to disclose this information constitutes material omissions of facts that a reasonable consumer would to know prior to the purchase of the products.

85.     Further, Defendant's acts and practices are unlawful because they violate or violated one or more of the following: California Civil Code §§1790, *et seq.*; Civil Code §1750, *et seq.*; California Uniform Commercial Code §2313; and California Bus. & Prof. Code §§17200 an d17500, *et seq.*

86.     Defendant's acts and practices are fraudulent in that it knowing failed to disclose material facts that a reasonable consumer would want to know prior to the purchase of the products.

87.     The injury to Plaintiff and the California Classes greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.    The injury clearly constitutes substantial injury as the products develop serious problems which require costly repairs and losses to the California Classes and extraordinary measures to keep operational.  There is no benefit to the consumers by allowing Defendant to knowingly market and sell products without disclosing material facts that a reasonable consumer would want to know.

88.     Plaintiff and the California Classes seek an order of this Court awarding restitution, injunctive relief and all other relief allowed under Section 17200, *et seq.*, plus interest, attorneys' fees and costs under California Code of Civil Procedure section 1021.5.

//

SECOND AMENDED COMPLAINT

**THIRD CAUSE OF ACTION**

(By Plaintiff, individually and on behalf of the California Classes)

**Violations of Cal. Bus. & Prof. Code §17500, *et seq.***

89.     Plaintiff hereby restates, re-alleges, and incorporates by reference herein the paragraphs stated above in this Second Amended Complaint as though fully set forth herein.

90.     Plaintiff, individually and on behalf of all similarly situated members of the California Classes, and the general public, brings this cause of action pursuant to the California Business and Professions Code §17500 *et seq.*

91.     The misrepresentations by omission by Defendant of the material facts detailed above constitute false and misleading advertising by omission and therefore constitute a violation of California Bus. & Prof. Code §17500, *et seq.*

92.     At all times relevant, Defendant's material omissions were likely to deceive consumers into purchasing refrigerators with the SCP and Ice System and purchasing the Model.

93.     Plaintiff and the California Classes have suffered injury in fact and have lost money or property as a result of Defendant's unfair advertising of the Refrigerators, as more fully set forth herein.  These injuries are ongoing in that Plaintiff and the California Classes continue to have problems with the SCP, Ice System, and Model and Defendant continues to fail to disclose the extraordinary measures that must take place to keep the Refrigerator operational.

94.     Unless Defendant is enjoined from continuing to engage in such wrongful actions and conduct, members of the California Classes will continue to be damaged by Defendant's false and /or misleading advertising by omission.

95.     Plaintiff and the California Classes seeks an order requiring Defendant to make full restitution of all monies wrongfully obtained and disgorge all ill-gotten revenues and/or profits, together with interest thereon and costs under California Code of Civil Procedure section 1021.5.

**FOURTH CAUSE OF ACTION**

(By Plaintiff, individually and on behalf of the California Classes)

**Breach of Express Warranty under the Song Beverly Act, Cal. Civ. Code §1790,** *et seq.***, Cal. Comm. Code §2313, and California Common Law**

96.     Plaintiff hereby restates, re-alleges, and incorporates by reference herein the paragraphs stated above in this Seconded Amended Complaint as though fully set forth herein.

97.     Plaintiff, individually and on behalf of all similarly situated California Class members, and the general public seeks recovery for Defendant's breach of express warranty under the laws of the State of California.

98.     Defendant's express written warranty states: "[s]hould your LG Refrigerator ("Product") fail due to a defect in materials or workmanship under normal home use, during the warranty period set forth below, LG will at its option repair or replace the product."

99.     Plaintiff provided Defendant repeated opportunities to repair the SCP, Ice System, and Model within the warranty period.  Her first phone call to Defendant concerning problems with the refrigerator was during the first month of ownership.   She made multiple calls thereafter.  On multiple occasions when Plaintiff would call to report problems with the refrigerator, Defendant told Plaintiff to unplug the refrigerator, wait, and then plug it back in.  This "fix" would be for various problems with the refrigerator, including when the refrigerator would make a loud noise like it was a plane taking off, when it would start to vibrate, when the control panel would start to flash, or when various error codes (such as "ER" or "Error Code FF") would appear.  When the ice maker would clog, Defendant would tell Plaintiff she needed to dump the ice in the ice maker every day so it would not get too full.

100.    In March 2012 Defendant finally decided to send a service technician to look at the refrigerator.  The service technician determined at that time the Refrigerator

1    needed a new "controller assy, main PCB, motor bracket, and motor."   These repairs
2    were made to the refrigerator.

3          101.    Plaintiff continued to have problems with the refrigerator even after the
4    repairs so she continued to contact Defendant.  In early May 2012 a service technician
5    was out again because of problems with the refrigerator.  During this visit the service
6    technician adjusted the cube size and "cleared faults."  Just one month later, in June 2012,
7    a service technician was again out.  He unclogged the ice chute and determined the motor
8    was burned out and that it needed another new PCB.

9          102     After Defendant's repeated failure to correct the problems, Plaintiff
10   requested Defendant provide her with a new refrigerator.  Defendant refused claiming
11   that *Plaintiff* was required to report the *exact* same problem at least three times before
12   Defendant would even consider replacing the refrigerator.

13         103.    Defendant failed to honor its express warranty to repair or replace the
14   product.   Any purported repair that Defendant made was itself defective because the
15   repair failed and problems persisted.  When Plaintiff sought replacement of the
16   refrigerator, Defendant refused.  Defendant has failed to comply with Song-Beverly Act,
17   Civil Code §1793.2(b) and (d), Cal. Uniform Commercial Code § 2313, and California
18   Common Law.

19         104.    Plaintiff and the California Classes relied on the express written warranties
20   and Defendant has failed to satisfy its obligations under the express written warranties by
21   not adequately repairing and/or replacing the products.

22         105.    Defendant had no motivation to fix the products because it entered into
23   contracts with repair companies whereby Defendant paid them a one-time amount
24   regardless how many times the Refrigerators had to be repaired.   Defendant's behavior
25   shows a conscious disregard for the rights of Plaintiff and the California Classes.

26         106.    Defendant breached its express warranties, as set forth above, by selling
27   and supplying the products in conditions which did not meet the warranty obligations
28   undertaken by Defendant and by failing to adequately repair the products.

- 28 -

107.    Defendant has received complaints and other notices from its customers advising Defendant of the same problems that Plaintiff experienced with her Refrigerator. Despite the notice and Defendant's knowledge, Defendant refused to honor its warranties.

108.    Even if notice was not given, or is somehow deemed defective, notice should be excused because of Defendant's knowledge of the problems with the products as alleged herein and because notice would have been and is futile as evidenced by Defendant's policy and practice of not adequately repairing or replacing the products.

109.    Plaintiff sent a letter to Defendant regarding the problems with her refrigerator and how it failed to operate as intended.   Thus, Plaintiff provided timely notice of the breaches of warranty alleged herein pursuant to California Commercial Code §2607(3)(A).

110.    Plaintiff and the California Classes were intended third-party beneficiaries of the expressed warranty made by Defendant.  Defendant, who is manufacturer of the Model and the refrigerators that use the SCP and Ice System, knew that the retailers to whom it sold these products to were not going to own the products any longer than it took to sell them to Plaintiff and the California Classes.  Further, Defendant intended the express warranty to be for the benefit of the Plaintiff and the California Classes, i.g. the consumers of the products.

111.    As a proximate result of Defendant's breach of express warranty, Plaintiff and the California Classes have sustained damages and other losses in an amount to be determined at trial.  Plaintiff and the California Class are entitled to recover damages pursuant to Civil Code §1794, including, attorneys' fees, rescission and other relief as is deemed appropriate.  Plaintiff and the California Class are also entitled to an award of punitive damages.

//

//

//

**FIFTH CAUSE OF ACTION**

(By Plaintiff, individually and on behalf of the California Classes)

**Breach of Implied Warranty under the Song Beverly Act Cal. Civ. Code §1790, *et seq.*, Cal. Uniform Comm. Code §2314, and California Common Law**

112.    Plaintiff hereby restates, re-alleges, and incorporates by reference herein the paragraphs stated above in this Second Amended Complaint as though fully set forth herein.

113.    Plaintiff, individually and on behalf of all persons similarly situated and the general public seeks recovery for Defendant's breach of the implied warranty.

114.    Under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §1792 *et seq.*, every sale of consumer goods is accompanied by both a "manufacturer's and retailer's" implied warranty that the goods are merchantable.

115.    The refrigerator and the parts contained therein  are "consumer goods" within the meaning of Cal. Civ. Code §1791(a).

116.    Defendant is a "manufacturer" within the meaning of Cal. Civ. Code §1791(j).

117.    Plaintiff and the California Classes bought the Model and/or the refrigerators with the SCP and Ice System at retail stores in the State of California.

118.    At the time of sale, and currently, Defendant is in the business of manufacturing and selling refrigerators with the SCP and Ice System.

119.    There is privity between Defendant, Plaintiff and the California Classes by Defendant's direct warranties and/or because Plaintiff and the California Classes were intended third-party beneficiaries of the implied warranty made by Defendant.  Defendant knew that the retailers to whom it sold the refrigerators with the SCP and Ice System were not going to own the refrigerators any longer than it took to sell them to Plaintiff and the California Classes.  Further, Defendant intended that the implied warranty that applied to the refrigerators was for the benefit of the Plaintiff and the California Classes.

120.    By operation of law, Defendant impliedly warranted to Plaintiff and the California Classes that its Model, SCP, and Ice System were of merchantable quality and fit for the ordinary purposes for which they are intended and used.  Defendant breached the implied warranty at the time of sale.

121.    Defendant knowingly and/or recklessly sold the Model and refrigerators with the SCP and Ice System that were not fit for the ordinary purposes for which they were intended and used.  As alleged herein, Defendant possessed actual superior knowledge that the Model, SCP, and Ice System did not work as intended.  Defendant's waiver and/or limits on implied warranties are unconscionable, illegal, and unenforceable, since Plaintiff and the California Classes had no meaningful choice in determining those time limitations.

122.    To the extent that Defendant may claim that it disclaimed the implied warranties under the Song Beverly Act, such disclaimer is invalid under California Civil Code §§ 1790.1, 1791.3, 1792.3 because there was no disclaimer provided that the Model, SCP, and/or Ice System were being sold "as is" or "with all faults."

123.    To the extent that Defendant may now claim that it excluded or modified the implied warranties under the California Uniform Commercial Code, such waiver is invalid because it was not conspicuous as required by California Uniform Commercial Code § 2316(2).  Plaintiff was not made aware of any waiver of implied warranties at the time of her purchase of the refrigerator.  The manual for the refrigerator was packed inside the refrigerator box and was not provided to her until after her purchase of the refrigerator.  There was no posting of any warranty disclaimer on the refrigerator and no one mentioned any warranty disclaimer at the time of the purchase.

124.    Plaintiff was not provided the option to purchase additional warranty coverage from Defendant at the time of purchase.  Plaintiff is informed and believes that Defendant does not provide the option to obtain additional warranty coverage outside of the one year limited warranty already provided by Defendant.  Defendant only offers an LG Premium Care Plan to extend the limited one year express warranty for up to three

1  additional years. Plaintiff and the California Classes had no way to obtain additional

2  coverage for the warranties of the merchantability or fitness of the Model, SCP, or Ice

3  System for a particular purpose from Defendant. Further, Defendant refused to honor its

4  express warranty because it refused to adequately repair or replace the refrigerator.

5      125.   Plaintiff did not have the option of purchasing another refrigerator with the

6  same space, layout, design, lighting, features, SCP, Ice System, or look as the one

7  available from Defendant. Plaintiff is informed and believes that Defendant patents its

8  products so that others cannot copy them.

9      126.   As a proximate result of Defendant's breach of implied warranty, Plaintiff

10  and the California Classes have sustained damages and other losses in an amount to be

11  determined at trial. Plaintiff and the California Classes are entitled to recover damages

12  and attorneys' fees as provided by statute, as well as costs, rescission, and other relief as

13  is deemed appropriate.

14      127.   Plaintiff and the California Classes also seek punitive damages since

15  Defendant acted with malice, oppression and fraud in performing the conduct set forth

16  above.

17                    **SIXTH CAUSE OF ACTION**

18      (By Plaintiff, individually and on behalf of the Classes against Defendant)

19  **Violations of the Magnuson-Moss Warranty Act (15 U.S.C. §§2301, *et seq.*) – Breach**

20                    **of Written Warranty**

21      128.   Plaintiff hereby restates, re-alleges, and incorporates by reference herein the

22  paragraphs stated above in this Second Amended Complaint as though fully set forth

23  herein.

24      129.   Plaintiff, individually and on behalf of all similarly situated members of the

25  Classes, and the general public seeks recovery for Defendant's breach of written warranty

26  under the laws of the Magnuson-Moss Warranty Act.

27      130.   The Refrigerators are "consumer products" as that term is defined under 15

28  U.S.C. §2301(3).

- 32 -

SECOND AMENDED COMPLAINT

131.    Plaintiff and the members of the Classes are "consumers" as that term is defined by 15 U.S.C. §2301(3), and utilized the Model, SCP, and Ice System for personal and household use and not for resale or commercial purposes.

132.    Defendant is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. §2301(4) and (5).

133.    Defendant provided Plaintiff and the Classes with "written warranties" as that term is defined by 15 U.S.C. §2301(7).

134.    In its capacity as warrantor, and by the conduct described herein, any attempt by Defendant to limit the warranties in a manner that is not permitted by law.

135.    By Defendant's conduct as described herein, Defendant has failed to comply with its obligations under its written and implied promises, warranties, and representations.

136.    Plaintiff and the Classes fulfilled their obligations under the Warranties.

137.    As a result of Defendant's breach of warranties, Plaintiff and the Classes are entitled to revoke their acceptance of the Model, SCP, and Ice System, obtain damages, punitive damages, equitable relief, and attorneys' fees and costs pursuant to 15 U.S.C. §2301.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff and the Classes pray for judgment against Defendant as follows:

1.  An order certifying that the action may be maintained as a class action as defined herein;

2.  For all recoverable compensatory, punitive, and other damages sustained by Plaintiff and the Classes;

3.  For all actual and/or statutory damages for injuries suffered by Plaintiff and the Classes in the maximum amount permitted by applicable law.

SECOND AMENDED COMPLAINT

4.  An order requiring restitution of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations.

5.  For statutory pre-judgment and post-judgment interest on any amounts;

6.  For an order enjoining Defendant wrongful, unlawful, fraudulent, deceptive, and unfair conduct as set forth above and to require Defendant to engage in a corrective notice campaign;

7.  For payment of reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure §1021.5;

8.  For costs of suit;

9.  For such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

DATED: July 8, 2013

CALLAHAN, THOMPSON, SHERMAN
& CAUDILL, LLP

By      *s/Kathleen Hartman*
        KATHLEEN M. HARTMAN
        Attorneys for Plaintiff
        **JEANNETTE CLARK, individually
        and on behalf of the Classes**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

JEANNETTE S. CLARK, individually
and on behalf of those similarly
situated,

          Plaintiff,

         vs.

LG ELECTRONICS U.S.A., INC.,
and DOES 1-25,

         Defendants.

Case No.:  3:13-cv-0485-JM-JMA

**CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2013, I caused the following document(s):

## SECOND AMENDED COMPLAINT FOR DAMAGES

to be filed electronically with the Clerk of the Court through ECF, and that ECF will send an e-notice of electronic filing to the following counsel:

John H. L'Estrange, Jr., Esq.
Andrew E. Schouten, Esq.
WRIGHT & L'ESTRANGE
401 West A Street, Suite 2250
San Diego, A 92101-8103
Tel:   619-231-4844
Fax:   619-231-6710
jlestrange@wllawsd.com
aschouten@wllawsd.com

Pamela R. Hanebutt, Esq.
Susan M. Razzano, Esq.
Eimer Stahl LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604
Tel:   (312) 660-7600
PHanebutt@eimerstahl.com
SRazzano@eimerstahl.com

Tai H. Park, Esq.
Amy Dieterich, Esq.
Park & Jensen LLP
630 Third Avenue, 7th Floor
New York, NY 10017
Tel:   (646) 200-6310
tpark@parkjensen.com
adieterich@parkjensen.com

Attorneys for Defendant LG Electronics U.S.A., Inc.

Dated:  July 8, 2013

/S/ KATHLEEN M. HARTMAN
Kathleen M. Hartman, Esq.
CALLAHAN, THOMPSON,
  SHERMAN & CAUDILL, LLP
2601 Main Street, Suite 800
Irvine, California  92614
khartman@ctsclaw.com
Phone: (949) 261-2872
Fax:    (949) 261-6060
Attorneys for Plaintiff Jeannette Clark

2