1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

JEANETTE CLARK, individually and on behalf of those similarly situated,

CASE NO. 13-cv-485 JM (JMA)

11

Plaintiff,

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO STRIKE

12

vs.

13
14

LG ELECTRONICS U.S.A., INC. and DOES 1 through 25, inclusive,

15

Defendant.

[Dkt. No. 20]

16
17

Plaintiff Jeanette Clark ("Plaintiff") filed a complaint in California state court

18

on December 10, 2012 against LG Electronics U.S.A., Inc. ("LG"), which was later

19

dismissed.  Plaintiff filed a first amended complaint ("FAC") in California  state

20

court on January 14, 2013.   On February 28, 2013, LG removed this matter to

21

federal court.  On June 7, 2013, the court granted LG's motion to dismiss Plaintiff's

22

first amended complaint and granted Plaintiff leave to file a second amended

23

complaint ("SAC").   On July 8, 2013, Plaintiff filed her SAC, and subsequently LG

24

filed a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6)

25

and a motion to strike under Rule 12(f) on August 5, 2013.  For the reasons

26

explained below, LG's motion to dismiss is GRANTED IN PART and DENIED IN

27

PART.  Additionally, LG's motion to strike is DENIED.

28

/ / /

## **BACKGROUND**

In or about October 2011, Plaintiff purchased a LG refrigerator, Model No. LFX31925ST, for approximately $3,000.  SAC ¶ 9.  She used her LG refrigerator in a manner consistent with its intended use.  Id.  The refrigerator allegedly had a Smart Cooling Plus system ("SCP system") "to keep your food fresh" and came with an express warranty for workmanship and materials.  Id. ¶ 11.  The refrigerator also had a LG Slim SpacePlus™ Ice System ("Ice System") located in the interior portion of the door of the refrigerator, which allegedly gives it more storage capacity than other refrigerators.  Id. ¶ 10.

Within one month of owning and operating the refrigerator, Plaintiff claims the refrigerator began to have problems.  Id. ¶ 12.  Plaintiff alleges the Ice System would repeatedly clog and become non-operational.  Id.  When Plaintiff contacted LG about the problem with the Ice System, Plaintiff alleges LG informed her that she would have to empty the ice tray every day in order to prevent the Ice System from clogging.  Id.  When the Ice System clogged, Plaintiff alleges it sometimes caused the motor to burn out, and the refrigerator to become non-operational.  Id. ¶ 63.

Additionally, Plaintiff claims the refrigerator would display various error messages and simply stop working at times.  Id.  When Plaintiff contacted LG about this problem, Plaintiff alleges LG instructed her to unplug the refrigerator for at least 15 minutes and then plug it back in to reboot the refrigerator's control board.  Id.  On occasion, plaintiff alleges this process would have to be performed multiple times in order to reboot the control board.  Id.  In order to reach the plug on the back of the refrigerator, Plaintiff states she had to move it out from the cupboard space and away from the wall every time she had to reboot the control

board.  Id.  ¶ 13.  When the refrigerator stopped working and when it was unplugged to reboot the control board, the refrigerator was not being cooled by the SCP system.  Id.  ¶ 12.  This resulted in food spoiling and water from the melted ice leaking onto the floor.  Id.

Plaintiff further alleges that LG was aware of these problems.  Plaintiff cites several complaints from the internet, which purportedly should have put LG on notice regarding the SCP system's defects.  See, e.g., id. ¶¶ 47, 57, 61, 75.  Plaintiff provides complaints made on several websites, including LG's website, consumer affairs, amazon.com,  and complaintsboard.com.  Id.  Plaintiff contends LG was aware of the problems with the Ice System because there were three complaints regarding the Ice System posted to LG's website prior to Plaintiff's purchase of the refrigerator.  Id. ¶ 57.  Plaintiff suggests the complaints posted on other websites evidence the repeated calls made by customers to LG's customer service line and LG's refusal or inability to repair the reported problems with this model of refrigerator.  Id. ¶¶ 47, 61, 75.

Plaintiff claims LG never disclosed the extraordinary measures a consumer would need to take to keep the SCP system, the Ice System, and the refrigerator itself operational.  Plaintiff contends LG's failure to disclose this information resulted in Plaintiff and the proposed class purchasing LG refrigerators that they would not have purchased otherwise, overpaying for the refrigerators, and/or incurring additional operating expenses.  Plaintiff further alleges the water that leaked onto the floor when the frozen items melted caused a safety hazard and damage to the floor.  Plaintiff also contends the refrigerator's operating problems required Plaintiff to throw out a significant amount of food that had spoiled, which

/ / /

caused Plaintiff monetary loss.  Plaintiff contends other class members may have suffered from these types of injuries as well.

In this action, Plaintiff seeks to represent several classes of purchasers. Specifically, Plaintiff identifies the following state and national classes:

    a. All persons in California who purchased an LG refrigerator for home use with the LG Smart Cooling Plus System (California SCP Class).

    b. All persons in California who purchased an LG refrigerator for home use with the LG Slim SpacePlus™ Ice System (California Ice System Class).

    c. All persons in California who purchased an LG refrigerator Model No. LFX31925ST (California Model Class).

    d. All persons in the United States who purchased an LG refrigerator for home use with the LG Smart Cooling Plus System (Nationwide SCP Class).

    e. All persons in the United States who purchased an LG refrigerator for home use with the LG Slim SpacePlus™ Ice System (Nationwide Ice System Class).

    f. All persons in the United States who purchased an LG refrigerator Model No. LFX31925ST (Nationwide Model Class).

Plaintiff asserts six claims against LG on behalf of herself and the California Classes:  (1) violation of Consumer Legal Remedies Act ("CLRA"); (2) violation of the California Business & Professions Code § 17200 *et seq.* ("UCL"); (3) violation of California Business & Professions Code § 17500 *et seq.* for false and misleading advertising ("FAL"); (4) breach of express warranty; (5) breach of implied warranty; and (6) violation of the Magnuson-Moss Warranty Act ("MMWA") (15 U.S.C. § 2301 *et seq.*).  The sixth claim alleging violation of the MMWA is the only claim asserted on behalf of the nationwide classes.

/ / /

/ / /

/ / /

# MOTION TO DISMISS

## I. Legal Standard

For a plaintiff to overcome a Rule 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Factual pleadings merely consistent with a defendant's liability are insufficient to survive a motion to dismiss because they only establish that the allegations are possible rather than plausible. See id. at 678-79. The court should grant 12(b)(6) relief only if the complaint lacks either a "cognizable legal theory" or facts sufficient to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

In addition, Rule 9(b) requires that the complaint "state with particularity the circumstances constituting fraud." The Ninth Circuit has explained that "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).

## II. Discussion

### A. Plaintiff's Standing to Sue on Behalf of the General Public

LG argues Plaintiff has improperly alleged each of her claims on behalf of "the general public." Specifically, LG contends private citizens may not bring UCL and FAL claims on behalf of the general public. See Branick v. Downey Sav. and Loan Ass'n, 39 Cal. 4th 235, 240-41 (2006)(noting private persons may no

longer sue under the UCL and FAL on behalf of the general public following Proposition 64).  LG further asserts Plaintiff may not bring a CLRA claim on behalf of the general public because only consumers, meaning direct purchasers, fall within the parameters of consumer remedies available under the CLRA.  See Schauer v. Mandarin Gems of Cal., Inc., 125 Cal. App. 4th 949, 960 (2005). Lastly, LG contends Plaintiff may not bring warranty claims on behalf of the general public because not all members of the general public are purchasers or consumers of LG products.  See Burr v. Sherwin Williams Co., 42 Cal. 2d 682, 695-96 (1954).  For these reasons, LG asks the court to dismiss Plaintiff's claims brought on behalf of the "general public" with prejudice.  Alternatively, LG asks the court to strike the "general public" allegations pursuant to Federal Rule of Civil Procedure 12(f) as they are immaterial to Plaintiff's claims as she does not seek relief on the general public's behalf.

Plaintiff contends LG's objection is premature as the SAC expressly describes each claim as brought on behalf of Plaintiff individually and specifically-named classes as indicated directly underneath the heading of each cause of action. With regard to the UCL, Plaintiff contends she is not trying to bring an action as a private attorney general under the UCL, and alleges that representative actions remain available under the UCL subject to class action pleading.  Plaintiff further contends the injunctive relief sought through her UCL claim benefits the general public because it stops a public harm.  As to the CLRA, Plaintiff contends she may seek injunctive relief as a private attorney general to enjoin future deceptive practices on behalf of the general public.  See Broughton v. Cigna Healthplans of Cal., 21 Cal. 4th 1066, 1080 (1999) *abrogated on other grounds by* AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (2011).  However, Plaintiff makes

no argument regarding her ability to bring breach of warranty claims, either express or implied, on behalf of the general public.

While Plaintiff may pursue a representative claim on behalf of a particular class under the UCL and FAL, California's Proposition 64 eliminated UCL and FAL suits on behalf of the general public unless they are brought by the Attorney General or other public authority. See Branick, 39 Cal. 4th at 240-41; Friedman v. 24 Hour Fitness USA, Inc., 580 F. Supp. 2d 985, 994 (C.D. Cal. 2008) (citing Cal. Bus. & Prof. Code § 17203); see also In re Tobacco II Cases, 46 Cal. 4th 298, 317 (2009).  As a result, Plaintiff's UCL and FAL claims may only be brought individually and on behalf of the identified classes.  The court therefore dismisses Plaintiff's UCL and FAL claims insofar as they are brought on behalf of the "general public" with prejudice and without leave to amend.

In contrast to the UCL and FAL, the CLRA allows plaintiffs to enjoin a corporation's deceptive or unlawful business practices throughout California on behalf of the general public.  Meyer v. Sprint Spectrum L.P., 45 Cal. 4th 634, 645 (2009); see also Friedman, 580 F. Supp. 2d at 994-95 (noting California case law suggests "there is nothing defective about pleading a claim for injunctive relief under the CLRA 'on behalf of the general public'")(citing Broughton, 21 Cal. 4th at 1080).  As Plaintiff's CLRA claim seeks injunctive relief, it may be brought on behalf of the general public.

As for Plaintiff's implied and express warranty claims, Plaintiff has not provided any legal authority for allowing a purchaser of a product to bring breach of warranty claims on behalf of the general public, many of whom have not purchased or used the product at issue.  Plaintiff's warranty claims do not seek injunctive relief on behalf of consumers generally, but rather seek relief in the form

1  of actual damages and rescission, relief which would be unrecoverable by non-

2  purchasers.  Thus, having no basis for finding Plaintiff able to bring breach of

3  warranty claims on behalf of the general public, the court dismisses Plaintiff's

4  breach of warranty claims brought on behalf of the general public with prejudice

5  and without leave to amend.

6

7  **B. Fraud by Omission Claims**

8  LG alleges that Plaintiff's CLRA,[1]  UCL,[2]  and FAL[3]  claims should be

9  dismissed for failure to meet Rule 9(b)'s heightened pleading requirements because

10 these fraud based claims were not pled with the requisite specificity.  Plaintiff

11 suggests the Rule 9(b) standards for pleading a fraud through omission claim "are

12 more relaxed."  However, as noted by the court in its previous order granting LG's

13 motion to dismiss, Plaintiff's CLRA, UCL, and FAL claims are premised on fraud

14 regardless of whether the claims allege affirmative misrepresentation or fraud

---

[1] The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale . . . of goods or services to any consumer."  Cal. Civ. Code § 1770.

[2] The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]" and "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

[3] The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500.

through omission; therefore, Plaintiff's claims must meet Rule 9(b)'s heightened pleading requirement.[4]

Previously, the court dismissed Plaintiff's fraud through omission claims as alleged in the FAC because Plaintiff had failed to adequately define her class. MTD Order at 8-9. While the FAC indicated that the class was based on the type of technology in her refrigerator, the FAC did not explicitly define her class as such. Accordingly, the court determined Plaintiff might have a valid claim if she could appropriately define the class in the SAC.

Whereas the FAC broadly defined the classes as all persons who purchased LG refrigerators in either the United States or California, the SAC provides six distinct classes based upon the model of the refrigerator, the SSP System, the Ice System, and the purchasers' location. FAC ¶¶ 19-21; SAC ¶ 16. Unlike the FAC's overly broad class definition, the class definitions in the SAC clearly link Plaintiff's specific complaints regarding the technology used by LG to the classes of individuals she seeks to represent. In light of these more explicit class definitions, the SAC remedies the Rule 9(b) problem previously identified by the court.[5] While LG does not contest whether Plaintiff's redefinition of the proposed

---

[4] In the first amended complaint, Plaintiff's fraud-based claims were premised on two distinct theories with one theory based on alleged affirmative misrepresentations made by LG and one theory based on LG's alleged misrepresentation by omission for failing to disclose material information to Plaintiff. Plaintiff asserts the SAC only pleads claims based on LG's alleged fraud through omission. In response, LG asks that Plaintiff's previous affirmative misrepresentation claim be dismissed with prejudice. However, the court previously dismissed that claim without prejudice, and Plaintiff has not realleged it here. Thus, as of now, there is no affirmative misrepresentation claim to dismiss. Accordingly, the court limits its analysis to the fraud by omission claim as alleged in the operative SAC.

[5] LG acknowledges that Plaintiff redefined her proposed classes in the SAC and has not argued that the SAC's class definitions are insufficient under Rule 9(b).

classes satisfies Rule 9(b), LG raises several additional challenges to Plaintiff's fraud by omission claims

### 1. LG's Actual Knowledge

First, LG argues that Plaintiff has not sufficiently alleged LG had knowledge of the defects with the refrigerators using the SCP System and/or Ice System.   LG made a similar argument with regard to Plaintiff's fraud by omission claim in the FAC, and the court noted it did not find "LG's arguments regarding knowledge persuasive given that the LG refrigerators allegedly did not function at all rather than having a smaller, harder to detect issue."  MTD Order at 9.  Nevertheless, LG argues the generalized complaints from various websites referenced in the SAC are neither numerous nor consistent enough to suggest LG had knowledge of the specific problems with the refrigerators is insufficient under Rule 9(b).

Contrary to LG's assertion, Plaintiff has pled specific facts suggesting LG had knowledge of the problems alleged by Plaintiff.  Notably, Plaintiff contends LG knew refrigerators containing the SCP System and/or Ice System did not work as intended based on the following factual allegations: (1)  LG had developed a "fix"  to unplug the refrigerator in order to reboot the system when the SCP System failed, (SAC ¶ 44); (2) the service technician sent to repair Plaintiff's refrigerator indicated the problems she was experiencing were common to LG refrigerators, (SAC ¶ 44); (3)  LG generates claim numbers for reported problems with its products for tracking purposes, (SAC ¶ 45); (4) the warranty service providers used by LG report the types of problems encountered and obtain necessary equipment, instruction, and training to repair LG's products, (SAC ¶ 46); and (5) the complaints posted on various websites indicate LG customers had made complaints

/ / /

to LG's customer service line to complain prior to Plaintiff's purchase of her refrigerators, (SAC ¶ 47).

Based on these allegations, the court is unpersuaded by LG's characterization of the SAC as being too generalized to sufficiently plead knowledge on the part of LG.   When considering the totality of Plaintiff's factual allegations, the SAC suggests LG would have knowledge of problems with its products through its ordinary process of tracking and receiving information from its customer service line, warranty service providers, and complaints posted on its own website.  Accordingly, the court finds Plaintiff has adequately pled knowledge with regard to the fraud by omission claims.[6]

### 2. Plaintiff's Reliance

LG also argues Plaintiff's fraud by omission claims under the CLRA, UCL, and FAL should be dismissed because she has not adequately pled that she relied upon the allegedly fraudulent omissions made by LG.[7]  Reliance can be proven in a fraudulent omission case by establishing that "had the omitted information been disclosed, [the plaintiff] would have been aware of it and behaved differently." Boschma v. Home Loan Center, Inc., 198 Cal. App. 4th 230, 250-51 (2011)(citing Mirkin v. Wasserman, 5 Cal. 4th 1082, 1093 (1993)). "[R]eliance is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct.  A plaintiff may establish that the

---

[6] In LG's motion to dismiss, LG argues Plaintiff's UCL "unfair" claim also fails because Plaintiff has not sufficiently pled knowledge as required to bring fraudulent omission claims under the UCL and FAL.  Insomuch as the court concludes Plaintiff has sufficiently pled knowledge for her UCL and FAL claims, LG's argument regarding Plaintiff's UCL "unfair" claim is moot.

[7] Because Plaintiff has not pled a fraud by misrepresentation claim in the SAC, the court need not consider LG's arguments regarding Plaintiff's failure to establish reliance on LG's alleged misrepresentations.

defendant's misrepresentation is an 'immediate cause' of the plaintiff's conduct by showing that in its absence the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct."  In re Tobacco, 46 Cal. 4th at 326 (citing Mirkin, 5 Cal. 4th at 1110–1111 (conc. & dis. opn. of Kennard, J.)).

LG argues Plaintiff has not established reliance because the SAC does not allege Plaintiff saw any advertisement by LG prior to her purchase that could possibly have contained the supposedly omitted information.  See Daniel v. Ford Motor Co., 2013 WL 2474934, at *5 (E.D. Cal. June 7, 2013)(concluding plaintiff's claim based on fraudulent omissions "must fail when [plaintiff] never viewed a website, advertisement, or other material that could plausibly contain the allegedly omitted fact"); Ehrlich v. BMW of N. Am., LLC, 801 F. Supp. 2d 908, 920 (C.D. Cal. 2010)(dismissing plaintiff's fraud through omission claims because plaintiff failed to allege how he would have been aware of any disclosures that defendant could have made).

In response, Plaintiff contends actual reliance may be presumed or inferred when the alleged omissions are material.  See In re Tobacco II Cases, 46 Cal. 4th at 328; Ehrlich, 801 F. Supp. 2d at 919.  Plaintiff suggests that simply alleging she would not have acted a certain way had she known all the facts is sufficient to demonstrate reliance.  See Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, at 327-28 (2011).  Here, Plaintiff contends she would not have purchased the refrigerator had she known that she would have to continually unplug and replug it to keep it operational and empty the ice tray on a daily basis in order for the Ice System to function properly.  Plaintiff contends these facts are sufficient to support her claims.

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     LG's reliance argument defies common sense and real-world business practice.  No refrigerator manufacturer would ever advertise its product to, in essence, consistently fail due to repeated clogging of the ice system, frequent problems with the cooling system necessitating control board rebooting, and periods of nonoperation.  Such advertising would be tantamount to an automobile manufacturer advertising its vehicle routinely stalls in freeway traffic, or a wireless telephone provider advertising a high rate of dropped calls.  Such disclosures do not exist in the real world because they represent product or service failure. Product advertising is meant to identify and buttress product features and value, not denigrate and diminish those qualities.  Under the unusual circumstances pled in this case, reliance may be established by LG's alleged failure to disclose at the point of purchase the alleged defects which, if true, would seem to negate the inherent purpose of the product.

     For these reasons, the court concludes Plaintiff has sufficiently alleged knowledge and reliance as required to bring CLRA, UCL, and FAL claims. Accordingly, LG's motion to dismiss Plaintiff's fraud-based claims is denied.[8]

---

[8] The court notes LG raises several new arguments regarding Plaintiff's fraud-based claims for the first time in its reply brief.  LG Reply at 3-5 (alleging Plaintiff failed to adequately plead active concealment, partial representation, and safety defect).  However, "arguments not raised by a party in its opening brief are deemed waived." United States v. Romm, 455 F.3d 990, 997 (9th Cir. 2006) (citing Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999)); see also Bazuaye v. INS, 79 F.3d 118, 120 (9th Cir.1996) ("Issues raised for the first time in the reply brief are waived.").  As these arguments were not raised in LG's opening brief, the court declines to consider them here.

1
2

### C. Warranty-Based Claims

3

#### 1. Breach of Express Warranty

4
5
6
7

A manufacturer is "not liable for breach of express warranty merely because a product manifests recurring failures during the warranty period.  Rather, the question is whether [a plaintiff] sought repairs, refunds, or replacements and, if so, whether [the manufacturer] responded appropriately under the warranty." Kent v.

8
9
10

Hewlett-Packard Co., 2010 U.S. Dist. LEXIS 76818, at *15-16 (2010).  However, irrespective of whether a manufacturer has responded appropriately under the warranty, "an express warranty covering 'materials and workmanship' does not

11
12

include design defects." See, e.g., Horvath v. LG Elecs. MobileComm U.S.A., Inc., 2012 WL 2861160, at *4 (S.D. Cal. Feb. 13, 2012); Gertz v. Toyota Motor Corp.,

13
14
15

2011 WL 3681647, at *3 (C.D. Cal. Aug. 22, 2011) (dismissing express warranty claim where warranty did not extend to design defects); Brothers v.

16
17
18

Hewlett-Packard Co., 2007 WL 485979, at *4 (N.D. Cal. Feb. 12, 2007) (rejecting a breach of express warranty claim for a design defect because the warranty guaranteed against defects in "materials and workmanship").

19
20
21
22

LG's express warranty contains the following language: "[s]hould your LG Refrigerator ("Product") fail due to a defect in materials or workmanship under normal home use, during the warranty period set forth below, LG will at its option repair or replace the product." SAC ¶ 98.  Based on this language, the court

23
24
25
26

previously dismissed Plaintiff's breach of warranty claim as alleged in the first amended complaint because "it [was] unclear what defect, other than a design defect, the LG refrigerators allegedly suffered from." MTD Order at 10.  As a result, the court concluded Plaintiff had not sufficiently pled a "materials or

27
28

workmanship" defect covered by the express warranty. Id. "If anything, multiple

repairs of the same part suggest[ed] that the defect could not be remedied by properly assembling the LG refrigerators with non-defective parts." Id. Thus, the court warned that Plaintiff would need to be more explicit regarding the LG refrigerators' non-design based defects in order to allege a viable breach of express warranty claim. Id.

In the instant motion, LG argues Plaintiff has not remedied these deficiencies in the SAC and instead continues to allege a design defect that is not covered by the express warranty. Specifically, LG argues the SAC suggests the alleged defects Plaintiff experienced could not be resolved with non-defective parts and therefore suggest a design defect inherent to the refrigerator, not just the particular unit Plaintiff purchased. See McCabe v. Am. Honda Motor Co., Inc., 100 Cal. App. 4th 1111, 1120 (2002)(noting manufacturing defects exist "when an item is produced in a substandard condition" and "is often demonstrated by showing the product performed differently from other ostensibly identical units of the same product line," whereas a design defect "exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective").

In response, Plaintiff argues the SAC alleges with more particularity the multiple problems she experienced with different parts within the Ice System, the SCP System, and throughout the entire refrigerator. Plaintiff contends she is not required to prove whether these problems are design defects or problems with materials and workmanship at this stage in the litigation as it would be impossible to do so without access to LG's discoverable information. Rather, Plaintiff contends the SAC need only plausibly allege the refrigerator's problems were caused by LG's defective materials or workmanship. Additionally, Plaintiff

/ / /

contends LG's failure to repair these problems constitutes a breach of LG's express warranty for materials or workmanship.

Having reviewed Plaintiff's factual allegations in the SAC, the court agrees with LG that Plaintiff's express warranty claim alleges a design defect rather than a defect in materials or workmanship. As a basis for her class action claims, Plaintiff alleges other purchasers of this particular model of LG refrigerator as well as purchasers of any LG refrigerators containing an SCP System or Ice System "suffered similar injuries" as a result of the same problems she experienced. Plaintiff also contends LG knew about the problems she was encountering because other consumers had reported similar problems to their customer service department and posted complaints on numerous websites. Plaintiff further alleges the service technician sent to repair her refrigerator indicated to her that the types of problems she experienced were common to LG refrigerators. Taken as a whole, these factual allegations suggest her refrigerator, and other LG refrigerators like hers, suffered from an overall design defect rather than a problem with materials or workmanship. Plaintiff argues the SAC sufficiently alleges a material or workmanship problem by alleging with more particularity the problems she experienced with different parts of the refrigerator, but she has not provided any allegations suggesting that the materials used were defective or because the materials were assembled in a shoddy or otherwise improper manner. See Horvath, 2012 WL 2861160, at *5 (S.D. Cal. 2012).

In sum, it remains unclear what defect, other than a design defect, the LG refrigerators allegedly suffered from. As a result, Plaintiff has not sufficiently alleged that her refrigerator suffered from defects in materials or workmanship such that LG had an obligation to repair or replace the refrigerator pursuant to the

express warranty.  Accordingly, Plaintiff's breach of express warranty claims are dismissed for failure to state a claim without leave to amend at this juncture. Should discovery produce evidence indicating an express warranty claim is viable, the court will entertain a motion to amend the operative complaint.

### 2.  Breach of Implied Warranty

Under California law, the implied warranty of merchantability means that consumer goods:  "(1) Pass without objection in the trade under the contract description; (2) Are fit for the ordinary purposes for which such goods are used; (3) Are adequately contained, packaged, and labeled; [and] (4) Conform to the promises or affirmations of fact made on the container or label."  Cal. Civ. Code § 1791.1.  "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind . . . . Goods to be merchantable must be . . . fit for the ordinary purposes for which such goods are used . . . ."  Cal. Com. Code § 2314.  A plaintiff claiming breach of an implied warranty of merchantability must show that the product "did not possess even the most basic degree of fitness for ordinary use."  Mocek v. Alfa Leisure, Inc., 114 Cal. App. 4th 402, 406 (2003).

In the SAC, Plaintiff alleges breach of implied warranty under the Song-Beverly Act, Cal. Civ. Code § 1790 *et seq.*, California Commercial Code Section 2314, and California common law.  Specifically, Plaintiff claims LG breached the implied warranty of merchantability by selling this model of refrigerator and other refrigerators with the SCP System and the Ice System despite knowing these products were not fit for the ordinary purposes for which they were intended and used.  Plaintiff contends any waiver or limits placed upon the implied warranties by Defendant are unconscionable, illegal, and unenforceable because Plaintiff and the

California class members had no meaningful choice in determining those limitations.

LG argues the SAC fails to state an implied warranty claim for two reasons. First, LG contends Plaintiff does not stand in vertical privity with LG as required to assert a breach of implied warranty claim.  Second, LG argues it disclaimed any implied warranties of merchantability within its express warranty, and Plaintiff has failed to allege a basis for finding this disclaimer unenforceable.

### a. Implied Warranty Claim Under the Song-Beverly Act

Under the Song-Beverly Act, every retail sale of "consumer goods" in California includes an implied warranty by the manufacturer and the retail seller that the goods are "merchantable" unless the goods are expressly sold "as is" or "with all faults."  Cal. Civ. Code §§ 1791.3, 1792.  Merchantability, for purposes of the Song–Beverly Act, means that the consumer goods: "(1) [p]ass without objection in the trade under the contract description,"(2) "[a]re fit for the ordinary purposes for which such goods are used," (3) "[a]re adequately contained, packaged, and labeled," and (4) "[c]onform to the promises or affirmations of fact made on the container or label."  Cal. Civ. Code § 1791.1.  " 'The core test of merchantability is fitness for the ordinary purpose for which such goods are used.'" Mexia v. Rinker Boat Co., 174 Cal. App. 4th 1297, 1303 (2009)(quoting Isip v. Mercedes–Benz USA, LLC, 155 Cal. App. 4th 19, 26 (2007)).  "Such fitness is shown if the product is in safe condition and substantially free of defects...."  Elias v. Hewlett-Packard Co., 903 F. Supp. 2d 843, 852 (N.D. Cal. 2012)(internal quotation marks and citations omitted).

/ / /

/ / /

### i. Vertical Privity

LG's argues that California law requires vertical privity for all breach of implied warranty claims.  For this proposition, LG relies primarily on Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008).  In Clemens, the Ninth Circuit recognized California Commercial Code section 2314 requires vertical contractual privity between the plaintiff and the defendant, meaning they are in "adjoining links of the distribution chain."  Id.  Pursuant to this rule, the Ninth Circuit concluded an end consumer who purchases a product from a retailer is not in privity with a manufacturer as required to bring an implied warranty claim under section 2314.  Id.; Osborne v. Subaru of Am., Inc., 198 Cal. App. 3d 646, 656 n. 6 (1988).

However, Plaintiff argues Clemens only considered implied warranty claims brought under the California Commercial Code and not implied warranty claims brought under the Song-Beverly Act.  Therefore, Plaintiff argues Clemens is inapposite to the court's consideration of her Song-Beverly Act implied warranty claim.  See Keegan v. Am. Honda Motor Co., Inc., 838 F. Supp. 2d 929, 947 n. 54 (C.D. Cal. 2012)(noting Clemens analyzes the privity requirements under California's general implied warranty laws rather than claims under the Song-Beverly Act).  Rather than relying upon Clemens, Plaintiff asks this court to follow other courts that have considered implied warranty claims under the Song-Beverly Act specifically and concluded the statutory language does not impose a privity requirement.  Keegan v. Am. Honda Motor Co., Inc., 838 F. Supp. 2d 929, 946-47 (C.D. Cal. 2012)(citing several cases from California district courts holding the Song-Beverly Act does not impose a vertical privity requirement); Ehrlich v. BMW of N. Am., LLC, 801 F. Supp. 2d 908, 921 (C.D. Cal. 2010); Gonzales v. Drew

Indus., Inc., 750 F. Supp. 2d 1061, 1072 (C.D. Cal. 2007); Gusse v. Damon Corp., 470 F. Supp. 2d 1110, 1116 n. 9 (C.D. Cal. 2007).

The court agrees with Plaintiff's assessment of the Ninth Circuit's decision in Clemens. The Ninth Circuit in Clemens tailored its analysis of the vertical privity requirement to implied warranty claims brought under California Commercial Code Section 2314. The Song-Beverly Act is never mentioned, either generally or with regard to its specific provisions. As a result, Clemens provides little guidance regarding implied warranty claims brought under the Song-Beverly Act. As a result, the court finds more persuasive the weight of authority considering the Song-Beverly Act and finding the statutory language does not impose a vertical privity requirement like that required under the California Commercial Code. Similarly, this court rejects LG's argument that vertical privity is required to bring an implied warranty claim under the Song-Beverly Act.

### ii. Disclaimer of Implied Warranty

Under section 1792.3 of the Song-Beverly Act, implied warranties of merchantability and fitness may only be waived when the sale of consumer goods is made on an "as is" or "with all faults" basis. As set forth in the court's previous order, LG's express warranty was included in the refrigerator's owner manual, and contained the following language that LG argues sufficiently disclaimed any implied warranties of merchantability or fitness for a particular purpose:

> THIS WARRANTY IS IN LIEU OF ANY OTHER WARRANTY, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. TO THE EXTENT ANY IMPLIED WARRANTY IS REQUIRED BY LAW IT IS LIMITED IN DURATION TO THE EXPRESS WARRANTY PERIOD ABOVE.

/ / /

/ / /

MTD Order at 12-13.  The SAC alleges that LG's disclaimer of implied warranties under the Song-Beverly Act is invalid under California Civil Code §§ 1790.1, 1791.3, and 1792.3 because the disclaimer did not provide that the LG Model refrigerator, SCP System, and Ice System were being sold "as is" or "with all faults."  SAC ¶ 122; see Mocek v. Alfa Leisure, Inc., 114 Cal. App. 4th 402, 409 (2003)(noting the Song-Beverly Act gives greater protections to consumers than the California Commercial Code by specifically prohibiting a waiver of the implied warranty of merchantability, except where the sale is "as is").  LG does not specifically address this new allegation in its motion to dismiss or reply brief.

In order to disclaim the implied warranty of merchantability and fitness under the Song-Beverly Act, the seller or manufacturer must provide the buyer with a conspicuous writing attached to the goods which clearly informs the buyer, prior to the sale, that the goods are being sold on an "as is" or "with all faults" basis.  Cal. Civ. Code §§ 1792.4(a)(1), (3)(detailing requirements for disclaimers of implied warranties on "as is" or "with all faults" sales).  Based on this clear statutory language and the intended purpose of the Song-Beverly Act to afford greater protections to consumers, the court concludes LG did not sufficiently disclaim the implied warranty of merchantability and fitness for a particular purpose under the Song-Beverly Act.  LG's disclaimer makes no mention of the sale being "as is" or "with all faults," and is therefore insufficient under section 1792.4.  Notably, LG has not offered any argument to the contrary.

In sum, the Song-Beverly Act does not require vertical privity to bring an breach of implied warranty claim and LG failed to comply with the disclaimer requirements under sections 1792.3 and 1792.4 of the Song-Beverly Act.

/ / /

Accordingly, the court denies LG's motion to dismiss Plaintiff's breach of implied warranty claim under the Song-Beverly Act.

### b.  California Commercial Code § 2314

#### i.  Vertical Privity and Third-Party Beneficiaries

While the Song-Beverly Act does not require vertical privity for a breach of implied warranty claim, it is generally accepted that vertical privity is required for breach of implied warranty claims brought under California Commercial Code Section 2314.  See Clemens, 534 F. 3d at1023; In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation, 754 F. Supp. 2d 1145, 1184 (C.D. Cal. 2010).  LG argues Plaintiff's implied warranty claim should be dismissed because she does not stand in vertical privity with LG as required by California law.  LG further contends that Plaintiff does not fall within the limited third-party beneficiary exception to the vertical privity requirement because Plaintiff failed to allege that she was an intended third-party beneficiary of any agreement between LG and the retail seller of the refrigerator.  Moreover, LG argues the Ninth Circuit rejected the third-party beneficiary exception to the vertical privity requirement in Clemens.  See 534 F.3d at 1024.

Plaintiff does not dispute the existence of a vertical privity requirement, but instead contends the third-party beneficiary exception applies.  Under California Civil Code section 1559, a third-party beneficiary may enforce a contract made expressly for his or her benefit.  See also In re Toyota Motor Corp., 754 F. Supp. 2d at 1184.  "A contract made 'expressly' for a third party's benefit need not specifically name the party as the beneficiary; to be deemed a third-party beneficiary, one need only to have experienced more than an incidental benefit

from the contract." Id. (citing Gilbert v. Steelform Contracting Co., 82 Cal. App. 3d 65, 69 (1978)).  Relying primarily upon the court's analysis in In re Toyota Motor Corp., Plaintiff contends "the clear weight of authority compels a conclusion that where plaintiffs successfully plead third-party beneficiary status, they successfully plead a breach of implied warranty claim."[9]  In re Toyota Motor Corp., 754 F. Supp. 2d at 1184-85 (citing Gilbert, 82 Cal. App. 3d at 69 (finding that a homeowner, as a third-party beneficiary of a subcontractor's warranty in favor of the contractor who performed work on a residence, could maintain a breach of implied warranty claim against subcontractor notwithstanding the lack of privity between the homeowner and the subcontractor).  Because LG knew the retailers to whom it sold the refrigerators were not going to own the refrigerators any longer than it took to sell them to Plaintiff and the California Classes, Plaintiff argues LG intended the warranties to benefit Plaintiff and the California Classes as third-party beneficiaries.  As further support for this argument, Plaintiff points to the following factual allegations: LG contracts with third-party repair companies to provide repairs to purchasers of their products from retailers; LG provides a phone number

---

[9] See also Arnold v. Dow Chemical Co., 91 Cal. App. 4th 698, 720 (2001) (finding, based on the fact that distributors and retailers were not intended to be the ultimate consumers, that plaintiff could maintain breach of implied warranty claim notwithstanding the lack of privity with manufacturer of pesticide); Cartwright v. Viking Industries, Inc., 249 F.R.D. 351, 356 (E.D. Cal. 2008) (relying on Gilbert and concluding that plaintiffs were, as third-party beneficiaries, entitled to maintain a breach of implied warranty claim against the manufacturer where plaintiffs, not the distributors, were the intended consumers); In re Sony VAIO Computer Notebook Trackpad Litigation, 2010 WL 4262191, at *3 (S.D. Cal. Oct. 28, 2010) (holding that the facts as pled by plaintiffs—that the retailer from which they purchased defective products was the manufacturer's authorized retailer and service facility—precluded dismissal of a breach of implied warranty claim for lack of privity); The NVIDIA GPU Litigation, 2009 WL 4020104, at *6–7 (N.D. Cal. Nov. 19, 2009) (finding, without elaboration, vertical privity requirement precluded breach of implied warranty claim against computer component manufacturer by purchasers of computers into which the component was incorporated because of the lack of allegations of a contract to which the computer purchasers were third-party beneficiaries)).

for purchasers to call and report problems; and LG sent service technicians to perform warranty repairs on Plaintiff's refrigerator.

The court finds Plaintiff has sufficiently pled third-party beneficiary status as required to avoid the vertical privity requirement under California Commercial Code Section 2314.   As Plaintiff suggests, several other courts have concluded implied warranty claims may be brought under California Commercial Code Section 2314 by the intended consumers of a product as third-party beneficiaries of the contract between the manufacturer and the authorized seller of the product.[10] Here, Plaintiff alleges LG sells its products through a network of authorized dealers that were not the intended beneficiaries of the express and implied warranties associated with LG's products.  Plaintiff has sufficiently alleged that she and the California classes were intended third-party beneficiaries of LG's warranty agreements.  Accordingly, the lack of vertical privity does not require dismissal of Plaintiff's implied warranty claim under California Commercial Code Section 2314.

### ii.  Disclaimer of Implied Warranty

Under California Commercial Code Section 2316, the implied warranty of merchantability under California Commercial Code Section 2314 may be excluded or modified if the language expressly mentions merchantability and is conspicuous. As noted above with regard to the implied warranty under the Song-Beverly Act, LG's express warranty was included in the refrigerator's owner manual, and

---

[10] To the extent LG argues the Ninth Circuit rejected the existence of a third-party beneficiary exception in Clemens, the court disagrees.  In Clemens, the Ninth Circuit did not specifically consider the third-party beneficiary exception or cases that have adopted the third-party beneficiary exception.

1
2   contained the following language that LG argues sufficiently disclaimed any
3   implied warranties of merchantability or fitness for a particular purpose:

4        THIS WARRANTY IS IN LIEU OF ANY OTHER WARRANTY,
         EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION
5        ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A
         PARTICULAR PURPOSE.  TO THE EXTENT ANY IMPLIED
6        WARRANTY IS REQUIRED BY LAW IT IS LIMITED IN
         DURATION TO THE EXPRESS WARRANTY PERIOD ABOVE.
7
    MTD Order at 12-13.
8
9        Plaintiff contends LG's disclaimer should be found invalid as it was not
10  conspicuous as required by California Uniform Commercial Code Section 2316(2).
11  SAC ¶ 123.  Under California law, any disclaimer or modification of a warranty
12  must be strictly construed against the seller.  Hauter v. Zogarts, 14 Cal. 3d 104, 119
13  (1975).  Disclaimers of implied warranties must be made available to the consumer
14  prior to the sale of the product in order to be binding on the consumer.  See
15  Dorman v. Int'l Harvester Co., 46 Cal. App. 3d 11, 19-20 (1975)("A disclaimer of
16  warranties must be specifically bargained for so that a disclaimer in a warranty
17  given to the buyer after he signs the contract is not binding."); Western Emulsions,
18  Inc. v. BASF Corp., 2007 WL 1839718, at * (C.D. Cal. 2007)(finding disclaimer of
19  warranties contained in printed materials provided after purchase void since the
20  disclaimers were not bargained for in the agreement between the parties).  In the
21  SAC, Plaintiff alleges the product manual was packed inside the refrigerator box
22  and was not provided to her until after her purchase of the refrigerator.  SAC ¶ 123.
23   She further alleges the warranty disclaimer was not posted on the refrigerator, and
24  no one mentioned it to her at the time of purchase.  Id.
25
26       In response, LG argues Plaintiff conflates the concepts of conspicuousness,
27  as required by California Uniform Commercial Code Section 2316(2) with a lack
28  of notice of the disclaimer of implied warranties.  LG contends its disclaimer is

sufficiently conspicuous under Section 2316(2) because Plaintiff has not alleged the disclaimer is not in writing, does not mention the implied warranties of merchantability or fitness, or does not appear in all capital letters.  LG suggests these are the only requirements for conspicuousness under the statute, and they have been met.  With regard to Plaintiff's lack of notice argument, LG contends Plaintiff's allegation that she was unable to view the disclaimer prior to purchasing the refrigerator "is insufficient to undo the binding terms of the warranty" where Plaintiff was able to review the warranty after purchase and could return the product if dissatisfied with the warranty's limitations.  See Berenblat v. Apple, Inc., 2010 WL 1460297, at *4 (N.D. Cal. Apr. 9, 2010); Tietsworth v. Sears, Roebuck and Co., 2009 WL 3320486, at *10 (N.D. Cal. Oct. 13, 2009).  LG contends the SAC fails to allege that Plaintiff attempted to return the refrigerator after reviewing the warranty, but could not.

Regardless of whether Plaintiff's objection to the disclaimer is framed as an issue of conspicuousness or lack of notice, the essence of her argument remains the same.  Plaintiff contends LG's failure to provide her with the disclaimer of implied warranties prior to her purchase of the refrigerator invalidates the disclaimer, and this court agrees.  The California Commercial Code considers a disclaimer to be "conspicuous" if it "so written, displayed, or presented that a reasonable person against whom it is to operate ought to have noticed it."  Cal. Comm. Code § 1201(10).  As noted by the court in Dorman, the purpose of the conspicuousness requirement was "to protect a buyer from [u]nexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty and permitting the exclusion of implied warranties only by conspicuous language or other circumstances which protect the buyer from

surprise." Based on Plaintiff's allegations, there would have been no way for Plaintiff to have noticed the disclaimer prior to receiving the product manual when the refrigerator was delivered. The facts as alleged by Plaintiff suggest she was surprised by the terms of the express warranty as she was unable to view the disclaimer before purchasing the refrigerator. MTD Order at 14. In this instance, LG's disclaimer seems to be exactly the type of "[u]nexpected and unbargained language" that the conspicuousness requirement was designed to prevent.

Defendant provides some authority from the Northern District of California suggesting a disclaimer need not be provided prior to purchase if the purchasers "were able to review the warranty upon purchase and to return the product if they were dissatisfied with the warranty's limitations." See Kowalsky v. Hewlett-Packard Co., 771 F. Supp. 2d 1138, 1156 (N.D. Cal. 2010) *vacated in part on other grounds* 771 F. Supp. 2d 1156 (N. D. Cal. 2011); Berenblat, 2010 WL 1460297, at *4; Tietsworth, 2009 WL 3320486, at *10. However, the court is more inclined to follow the state court's ruling and rationale as articulated in Dorman for the reasons set forth above. Additionally, the conclusion in Dorman reflects important policy considerations as articulated by other courts across the country when considering the effect of post-sale disclaimers of implied warranties under the Uniform Commercial Code.[11] See generally 18 Williston on Contracts § 52:81

---

[11] Moreover, the proffered cases from the Northern District are individually distinguishable from the facts as alleged by Plaintiff in the SAC. See Kowalsky, 771 F. Supp. 2d at 1156 *vacated in part on other grounds*, 771 F. Supp. 2d 1156 (N. D. Cal. 2011)(plaintiff acknowledged that the Limited Warranty, which contained the disclaimer, was available on the defendant's website where he purchased the product); Berenblat, 2010 WL 1460297, at *4 (named plaintiffs had not alleged that they themselves did not receive pre-sale notice of the warranty); Tietsworth, 2009 WL 3320486, at *10 (plaintiffs admitted that they were provided with a ninety day period in which to return the Machines "for any reason"); see also In re iPhone 4S Consumer Litigation, 2013 WL 3829653, at *16 (N.D. Cal. July 23, 2013)(noting that plaintiffs had not pled the existence of an unqualified return period and defendant provided no evidence of such a period of which the Court can properly take judicial notice).

(4th ed.)(listing cases in which courts have generally held "disclaimers of implied warranties that are made after the sale has been consummated, such as when given to the buyer on or after delivery of the goods, in an invoice, receipt, product manual, or similar instrument, are ineffectual unless the buyer is chargeable with knowledge of the disclaimers and may be said to have assented to them."); 1 The Law of Prod. Warranties § 8:8 (noting "courts generally nullify such post-contract disclaimers" of implied warranties).

Taking all factual allegations as true and drawing all reasonable inferences drawn in Plaintiff's favor, the court concludes Plaintiff has sufficiently alleged LG's disclaimer of implied warranties is invalid.  Accordingly, LG's disclaimer does not require dismissal of Plaintiff's implied warranty claim under California Commercial Code Section 2314.  Insomuch as Plaintiff has sufficiently alleged third-party beneficiary status and the invalidity of LG's disclaimer, the court denies LG's motion to dismiss Plaintiff's implied warranty claim under California Commercial Code Section 2314.

### c. Disclaimer of Damages for Plaintiff's Implied Warranty Claims

LG also argues the disclaimer in the express warranty properly disclaimed special, punitive, and consequential damages for Plaintiff's warranty-based claims. The express warranty provides:

> NEITHER THE MANUFACTURER NOR ITS U.S. DISTRIBUTOR SHALL BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, INDIRECT, SPECIAL, OR PUNITIVE DAMAGES OF ANY NATURE, INCLUDING WITHOUT LIMITATION, LOST REVENUES OR PROFITS, OR ANY OTHER DAMAGE WHETHER BASED IN CONTRACT, TORT, OR OTHERWISE.

/ / /

/ / /

Absent unconscionability, LG argues California law authorizes disclaimers such as these pursuant to California Commercial Code Section 2719(3).[12]  Because Plaintiff fails to sufficiently allege unconscionability, LG contends her claims for disclaimed damages should be dismissed.[13]

## 1.  Song-Beverly Act Implied Warranty Claim

Plaintiff argues LG's disclaimer of damages for an implied warranty claim under the Song-Beverly Act is unenforceable because the Song-Beverly Act specifically provides for recovery of "damages and other legal and equitable relief."  Cal. Civ. Code § 1794(a); Martinez v. Kia Motors Am., Inc., 193 Cal. App. 4th 187, 193-94 (2011).  "Any waiver by the buyer of consumer goods of the provisions of [the Song-Beverly Consumer Warranty Act], except as expressly provided [by the Song-Beverly Consumer Warranty Act], shall be deemed contrary to public policy and shall be unenforceable and void."  Cal. Civ. Code § 1790.1.  Accordingly, Plaintiff contends the Song-Beverly Act should be applied in such a way that provides its full, protective benefits to the consumer.  See Music Acceptance Corp. v. Lofing, 32 Cal. App. 4th 610, 619 (1995).  Notably, LG has not specifically addressed Plaintiff's arguments regarding the permissibility of disclaiming damages under the Song-Beverly Act.

---

[12] " 'Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is invalid unless it is proved that the limitation is not unconscionable. Limitation of consequential damages where the loss is commercial is valid unless it is proved that the limitation is unconscionable."  Cal. Comm. Code § 2719(3).

[13] Neither party makes a specific argument regarding LG's ability to disclaim damages for Plaintiff's breach of express warranty claim.  However, as the express warranty claims have been dismissed, the issue of damages for these claims is now moot.

The court finds LG's disclaimer of damages unenforceable with regard to Plaintiff's breach of implied warranty claim under the Song-Beverly Act.  The Song-Beverly Act expressly allows for recovery of incidental and consequential damages.  See Cal. Civ. Code § 1794(b)(2) (measure of buyer's damages where goods have been accepted includes Sections 2714 and 2715 of the California Commercial Code); Cal. Com. Code § 2714(3) ("In a proper case any incidental and consequential damages under Section 2715 also may be recovered."); Cal. Com. Code § 2715 (buyer's incidental and consequential damages); see also Cal. Civ.Code §§ 1793.2(d)(2)(A), (B) ("The manufacturer also shall pay for ... any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer.").  The Song-Beverly Act also provides for recovery of punitive damages in cases of willful breach.  Brilliant v. Tiffin Motor Homes, Inc., 2010 WL 2721531, at *3 (citing Romo v. FFG Insurance Co., 397 F. Supp. 1237, 1240 (C.D. Cal. 2005) (noting Song-Beverly Act civil penalties provision in Cal. Civ. Code § 1794(c) are akin to punitive damages)).  As noted by Plaintiff, the provisions of the Song-Beverly Act may not be waived as a general matter.  See Cal. Civ. Code § 1790.1; see also Gusse v. Damon Corp., 470 F. Supp. 2d 1110, 1117-18.  Insomuch as Plaintiff has properly alleged an implied warranty claim under the Song-Beverly Act, the court concludes LG's disclaimer of damages is unenforceable as to this claim.

**2.  California Commercial Code Implied Warranty Claim**

Plaintiff also contends that LG's attempted disclaimer of damages is unconscionable and is therefore unenforceable under California Commercial Code section 2719(3).  Under this provision, consequential damages may be limited or

excluded unless the limitation or exclusion is unconscionable.  Cal. Com. Code § 2719(3).

The unconscionability alleged by Plaintiff has both a procedural and a substantive element.  See Aron v. U–Haul Co. of Ca., 143 Cal. App. 4th 796, 808 (2006) (citing Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal. 4th 83, 114 (2000)).  "The procedural element focuses on factors of oppression and surprise."  Berenblat, 2010 WL 1460297, at *4.  "The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party."  Kinney v. United Healthcare Servs., 70 Cal. App. 4th 1322, 1329 (1999).  "'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms."  A & M Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 486 (1982).  In contrast to the procedural element of oppression and surprise, "[t]he substantive element of unconscionability focuses on the actual terms of the agreement and evaluates whether they create 'overly harsh' or 'one-sided' results as to 'shock the conscience.'"  Aron, 143 Cal. App. 4th at 809.

As noted in the court's previous order dismissing Plaintiff's claims, Plaintiff's pleadings suggest that her LG refrigerator did not meet the most basic degree of fitness for its standard use.  The court concluded such inability to use the LG refrigerator for its intended purpose suggests that substantive unconscionability may exist.  MTD Order at 14.  Having reviewed the SAC, the court concludes Plaintiff has sufficiently alleged the disclaimer of damages was procedurally unconscionable.   As noted, Plaintiff appears to have been surprised by the terms of her LG refrigerator's warranty, especially because Plaintiff was unable to view the

disclaimer prior to purchasing the refrigerator.  While the disclaimer of damages was not hidden in a prolix of the printed form at issue, it was not provided to Plaintiff at the time of purchase and therefore Plaintiff lacked any ability to negotiate its terms or to make a different choice based on the disclaimer's inclusion in the express warranty.  See Dorman, 46 Cal. App. 3d at 20 (holding a disclaimer of consequential damages unenforceable when provided to the purchaser after the sale).  The court previously noted that Plaintiff had not pled procedural unconscionability regarding LG's disclaimer of the implied warranty because she had not pled either that other choices were not available to her or that she could not obtain additional warranty coverage from LG.  Whereas the procedural unconscionability of a disclaimer of implied warranties could be ameliorated by LG's offer of additional warranty coverage, it is unlikely additional warranty coverage would remedy unnegotiated disclaimer of damages as the extended warranty coverage presumably contains an identical provision.

In light of the relative bargaining power of the parties and the factual scenario alleged in the SAC, the court finds Plaintiff has sufficiently alleged LG's disclaimer of damages in the express warranty was unconscionable and therefore unenforceable.  Accordingly, the court denies LG's motion to dismiss the damages requested by Plaintiff for her implied warranty claim under California Commercial Code Section 2314.

### 3. Magnuson–Moss Warranty Act ("MMWA") Claims

The Magnuson–Moss Warranty Act ("MMWA") provides a federal cause of action for state law express and implied warranty claims. 15 U.S.C. §§ 2301, *et. seq.*  Under the MMWA, a consumer may bring suit against a warrantor in any state for failure to comply with its obligations under a written warranty or implied

warranty. 15 U.S.C. § 2310(d)(1).  Dismissal of the state law express and implied warranty claims requires the same disposition with respect to an associated MMWA claim.  Clemens, 534 F.3d at 1022; In re Sony Grand Wega, KDF–E A10/A20 Series Rear Projection HDTV Television Litig., 758 F. Supp. 2d 1077, 1101 (S.D. Cal. 2010).  The court has dismissed Plaintiff's breach of express warranty claims without leave to amend at this juncture.  However, because the court concludes that Plaintiff has stated a claim for breach of implied warranty under state law, the court denies LG's motion to dismiss Plaintiffs' MMWA cause of action based upon breach of implied warranty.

## MOTION TO STRIKE

### I. Legal Standard

Rule 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  However, striking the pleadings is considered "an extreme measure," and Rule 12(f) motions are therefore generally "viewed with disfavor and infrequently granted."  Stanbury Law Firm v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000) (quoting Lunsford v. United States, 570 F.2d 221, 229 (8th Cir. 1977)).

### II. Plaintiff's Class Allegations

Class allegations are generally not tested at the pleadings stage and instead are usually tested after one party has filed a motion for class certification. E.g., Thorpe v. Abbott Labs., Inc., 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008); In re Wal–Mart Stores, Inc. Wage & Hour Litig., 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007).  However, as the Supreme Court has explained, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim."  Gen. Tel. Co. of

Sw. v. Falcon, 457 U.S. 147, 160 (1982).  Thus, a court may grant a motion to strike class allegations if it is clear from the complaint that the class claims cannot be maintained.  E.g., Sanders v. Apple, Inc., 672 F. Supp. 2d 978, 990–91 (N.D. Cal. 2009).

LG argues that Plaintiff's class allegations should be stricken because the class is not ascertainable.  LG contends the putative classes as alleged by Plaintiff necessarily include members who have not experienced any problems with their main board control panels or other parts of their refrigerators.  Without an injury, LG argues these putative class members have no standing to sue.   LG also seeks to strike or dismiss Plaintiff's nationwide class allegations because resolution of Plaintiff's MMWA claims will necessarily require application of the law of all 50 states.  LG contends this daunting task will preclude certification of a nationwide class.

In response, Plaintiff contends LG's attempt to strike or dismiss the class claims at this stage is improper.  While class allegations may be stricken at the pleading stage, Plaintiff argues "[a]ny doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike."  In re Wal-Mart Stores, Inc. Wage and Hour Litigation, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007).  Plaintiff relies upon several cases in which the court determined class allegations were more properly considered in the context of class certification.  Id. (denying motion to dismiss or strike class allegations at the pleading stage and reserving issue for class certification motion); *accord* Whitson v. Bumbo, 2008 WL 2080855, at *1 (N.D. Cal. May 8, 2008); Shabaz v. Polo Ralph Lauren Corp., 586 F. Supp. 2d 1205, 1209 (C.D. Cal. 2008).

/ / /

In this instance, the court agrees with Plaintiff.  LG's motion regarding Plaintiff's class allegations is premature, and the court is not prepared to find, based on the pleadings alone, that Plaintiff cannot possibly state valid class claims. Motions to strike or dismiss class allegations at this stage are generally disfavored because a motion for class certification is the more appropriate vehicle for the type of arguments made by LG here.  Accordingly, the court denies without prejudice LG's motion to dismiss or, alternatively, to strike Plaintiff's class certification allegations.

## **CONCLUSION**

Based on the foregoing, defendant LG's motion to dismiss is GRANTED IN PART and DENIED IN PART, and Defendant LG's motion to strike is DENIED. Accordingly, the court dismisses Plaintiff's UCL, FAL, and breach of warranty claims made on behalf of the general public with prejudice and without leave to amend.  Additionally, the court dismisses Plaintiff's breach of express warranty claims and MMWA claim based upon breach of express warranty without leave to amend at this time.  Defendant LG is ordered to file its answer within 20 days of the filing of this order.

IT IS SO ORDERED.

DATED:  October 29, 2013

_____
Hon. Jeffrey T. Miller
United States District Judge