ROBERT W. THOMPSON, Esq. (SBN 106411)
KATHLEEN M. HARTMAN, Esq. (SBN 219934)
**CALLAHAN, THOMPSON, SHERMAN**
**& CAUDILL, LLP**
2601 Main Street, Suite 800
Irvine, California 92614
Tel    :    (949) 261-2872
Fax    :    (949) 261-6060
Email :    rthompson@ctsclaw.com
              khartman@ctsclaw.com

Attorneys for Plaintiff,
**JEANNETTE CLARK, individually and**
**on behalf of those similarly situated**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANNETTE CLARK, individually and on behalf of those similarly situated, | Case No.: 3:13-cv-0485-JM-JMA |
| | Judge: Jeffrey T. Miller |
| | Mag. Judge: Jan M. Adler |
| | Complaint Filed: 12/10/2012 |
| Plaintiff, | **CLASS ACTION** |
| vs. | |
| LG ELECTRONICS U.S.A., INC. and DOES 1-25, inclusive | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; REQUEST FOR AN AWARD OF A CLASS REPRESENTATIVE ENHANCEMENT; REQUEST FOR AN AWARD OF ATTORNEYS FEES AND COST; AND REQUEST FOR ENTRY OF FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE** |
| Defendant. | |
| | Date:     May 18, 2015 |
| | Time:     10:00 a.m. |
| | Crtrm.:   5D, 5th Floor |

# TABLE OF CONTENTS

I.    INTRODUCTION .......................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................... 1

III.  SUMMARY SETTLEMENT TERMS AND NOTICE PERIOD ..................... 3

  A.    The Parties .................................................................................... 3

    1.    The Representative Plaintiff ............................................... 3

    2.    The Plaintiff Class ............................................................... 4

    3.    Defendant LGE ..................................................................... 5

    4.    Class Counsel ....................................................................... 5

  B.    The Benefits Of The Settlement To The Class ........................... 5

    1.    Repairs .................................................................................. 5

    2.    Reimbursement for Property Damage and Spoiled Food ........... 6

    3.    Warranty Extension ............................................................ 7

  C.    Settlement Administrator and Administrative Cost .................. 7

  D.    Notice To The Class And To Attorneys' General ...................... 7

  E.    Claim Forms Received .................................................................. 8

  F.    Opt Outs ......................................................................................... 8

  G.    Objections ...................................................................................... 8

  H.    Class Representative Enhancement ............................................ 8

  I.    Attorneys' Fees And Costs .......................................................... 8

IV.   THE SETTLEMENT SATISFIES FINAL APPROVAL CRITERIA ............... 9

  A.    The Strength Of The Plaintiff's Case And The Risk, Expense, Complexity, And Likely Duration Of Further Litigation ............................................. 10

  B.    The Risk Of Maintaining Class Action Status Throughout The Trial ........ 11

  C.    The Benefits Of The Settlement ................................................ 11

  D.    The Extent Of Discovery Completed And The Stage Of The Proceedings .. 13

  E.    The Experience And Views Of Counsel ..................................... 14

  F.    Governmental Agencies Did Not Object To The Settlement ......... 15

- i -

G.  The Reaction Of The Class Members To The Proposed Settlement............15

H.  The Notice To Class Members Was Adequate................................17

I.  The Enhancement To The Class Representative Is Appropriate................17

J.  The Proposed Attorneys' Fees Are Reasonable And Appropriate..............19

VI.  CONCLUSION...........................................................22

## TABLE OF AUTHORITIES

**Cases**

*Aamco Automatic Transmission v. Tayloe,* 82 F.R.D. 405 (E.D. Pa. 1979) ..................18

*Ass'n of Cal. Water Agencies v. Evans,* 386 F.3d 879 ......................................21

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ..............................14

*Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992)........................9

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ........................................14

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ....................................17

*Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15 (N.D. Cal. 1980)..................14

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,*
    137 F.R.D. 240 (S.D. Ohio 1991) ...................................................18

*Evans v. Linden Research, Inc.* 2014 WL 1724891 (N.D. Cal. 2014) ............................16

*Gabel et al. v. Oracle Corporation, et al.,* SACV03-348AHS(MLGx)...........................18

*Glass v. UBS Fin. Servs., Inc.,* 2007 WL 221862, at *4 (N.D.Cal.2007) .....................11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)................................9

*Hensley v. Eckerhart,* 461 U.S. 424 (1983)..............................................20

*In re Agent Orange Product Liability Litigation*, 818 F.2d 145 (2d Cir. 1987) ..............17

*In re Chicken Antitrust Litig.,* 669 F.2d 228 (5th Cir.1982) ...........................13

*In re Mego Financial Corp. Securities Litigation,* 213 F.3d 454 (9th Cir. 2000)............16

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ..........................13

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977) ...................................... 16

*Moore v. Verizon Commc'n Inc.* 2013 WL 4610764 ......................................................... 16

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco,*
 688 F.2d 615, 626 (9th Cir. 1982) ........................................................... 9, 10, 12

*Patterson v. Stovall*, 528 F.2d 108 (7th Cir. 1976) ........................................................... 14

*Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268 (9th Cir.1989) ........................... 19

*Rodriguez v. West Publishing Corp.* 563 F.3d 948 (9th Cir. 2009) ............................... 9, 11

*Shames v. Hertz Corp*. 2012 WL 5392159 ........................................................................ 16

*Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301 (9th Cir.1990) ...... 19

*Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003) .................................................... 17, 20

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ............................... 10, 22

*Towheyy v. United States*, 2011 WL 3179036 (C.D. Cal. July 25, 2011) ........................ 16

*Utility Reform Project v. Bonneville Power Admin.,* 869 F.2d 437 (9th Cir. 1989) ........... 9

*Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943 (9th Cir.1976) ......................................... 9

*Van Vranken v. Atlantic Richfield Co.,* 901 F.Supp. 294 (N.D. Cal. 1995) ............... 17, 18

*Vasquez v. State of Cal.*, 45 Cal.4th 243 ........................................................................ 21

*Wilson v. Airbourne, Inc.,* 2008 WL 3854963 *4-5 ........................................................ 17

*Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86 (3d Cir. 1985)..... 17

**Statutes**

Cal. Code Civ. Proc. § 1021.5 ........................................................................................... 21

Fed. R. Civ. Proc. 23 (e) ............................................................................................. 18, 20

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff Jeannette S. Clark, on behalf of herself and the preliminarily certified class, requests this Court grant final approval of the Agreement of Settlement ("Agreement" or "Settlement Agreement") entered into with Defendant LG Electronics U.S.A., Inc. ("LGE").[1]   The Settlement Agreement resolves the class action complaint brought by Ms. Clark for:  (1) violation of the California Consumer Legal Remedies Act ("CLRA"); (2) violation of the California Business & Professions Code § 17200 ("UCL"); (3) violation of the California Business & Professions Code § 17500 ("FAL"); (4) breach of implied warranty; and (5) violation of the Magnuson-Moss Warranty Act ("MMWA").

The Settlement was reviewed by this Court and preliminarily approved as fair, reasonable and adequate on December 19, 2014.  Document ("Doc.") No. 48. The Parties have complied with the Court approved notice procedures and have received 10,305  claims.   Accordingly, Plaintiff and Class Counsel now request this Court grant final approval of the Settlement, approve payment of a $5,000 Class Representative enhancement to Plaintiff, and approve payment of $367,650.10 in attorneys' fees and costs to Callahan, Thompson, Sherman & Caudill, LLP.

**II.    STATEMENT OF FACTS**

On December 10, 2012, Plaintiff filed a class action Complaint against LGE in California state court.  The Complaint alleged that the LG Signature Model refrigerator she purchased suffered certain defects that were required to be disclosed but were not disclosed prior to the purchase.  The Complaint included claims for violations of certain California consumer protection statutes and for breach of express and implied warranty.   On January 14, 2013, Plaintiff filed a

_____

[1] The Agreement of Settlement is attached at Document No. 44-3.

First Amended Complaint ("FAC").  On February 28, 2013, LGE removed the FAC to Federal Court.  On April 8, 2013, LGE moved to dismiss the FAC on a number of grounds and, in an Order dated June 7, 2013, the Court granted LGE's motion to dismiss in its entirety and allowed Plaintiff leave to amend.  Doc. Nos. 10 & 16.

On July 8, 2013, Plaintiff filed a Second Amended Complaint ("SAC").  *Id.* at 17.   In the SAC, Plaintiff reasserted that she experienced a number of problems with her refrigerator, that these problems were caused by undisclosed defects, that LGE failed to adequately repair her refrigerator, and that others had experienced the same problems.  The SAC asserted six causes of action:  (1) violation of the CLRA; (2) violation of the UCL; (3) violation of the FAL; (4) breach of express warranty; (5) breach of implied warranty; and (6) violation of the MMWA.  Plaintiff also sought to certify California Classes for all six causes of action and a Nationwide Class for violation of the MMWA.

On August 5, 2013, LGE moved to dismiss Plaintiff's SAC.  *Id.* at 20.  By Order dated October 29, 2013, this Court granted in part and denied in part LGE's motion.  *Id.* at 24.  This Court denied LGE's motion as to the CLRA, UCL, FAL, breach of implied warranty, violation of the MMWA as to breach of implied warranty, and class allegations.  This Court granted the motion as to breach of express warranty, but indicated it would allow Plaintiff leave to amend should additional facts become available during discovery; the MMWA as to breach of express warranty only; and the allegations on behalf of the general public under the UCL, FAL, and breach of implied warranty.  *Id.*

LGE filed its Answer to the SAC on December 2, 2013.  *Id.* at 27.  Shortly thereafter, this Court ordered the Parties to attend an Early Neutral Evaluation Conference ("ENE") on January 29, 2014.  *Id.* at 28 and 29.   On December 11, 2013, counsel for LGE contacted Plaintiff's counsel and initiated settlement discussions.  *Id.* at 44-2, Decl. Hartman at ¶ 10.  The parties agreed to exchange

briefs prior to attending the ENE. *Id.* The Parties, along with their respective counsel, appeared in person at the ENE. *Id.* The ENE was presided over by the Honorable Magistrate Judge Jan M. Adler. *Id.* at 52. During the ENE, the Parties were able to reach an agreement in principle that was put into the court record. *Id.* at 44-2, Decl. Hartman at ¶ 10 and Exhibit 2 at Doc. 44-4.

As a result of the ENE, and at the request of Plaintiff's Counsel, LGE provided discovery that included the number of Signature Model Refrigerators produced (including those manufactured for Sears and sold under the Kenmore brand name); the number of calls received alleging Refrigerator Issues, as defined in the Settlement Agreement; and the solutions developed to address the Refrigerator Issues. *Id.* at 44-2, Decl. Hartman at ¶ 5. Additionally, counsel for Plaintiff performed an independent investigation by interviewing a repair technician who serviced the refrigerators at issue, speaking with potential class members, and researching complaints posted on various Internet websites. *Id.*

As the Parties continued to work through the details of the Settlement Agreement, they ran into disputes over implementation of its terms. *Id.* at 44-5, Dec. Thompson at ¶ 13. To resolve these disputes the Parties participated in a full day's mediation with the Honorable Irma E. Gonzalez (ret.) and subsequent follow up phone calls. As a result of the continued efforts of the Parties and with the help of Judge Gonzalez, the Parties were able to finalize the terms of the Settlement.

On October 28, 2014, Plaintiff submitted a motion for preliminary approval of the Settlement. *Id.* at 44-1. The motion was granted on December 19, 2014. Doc. 48.

III.    SUMMARY SETTLEMENT TERMS AND NOTICE PERIOD

    A.    The Parties

        1.    The Representative Plaintiff

Plaintiff Clark purchased the LG refrigerator that is the subject of this

litigation.  She experienced the Refrigerator Issues[2] as defined in the Settlement Agreement and was appointed as the Class Representative for purposes of preliminary approval of the Settlement.  *Id.* at 48 at ¶ 3.

### 2.    The Plaintiff Class

This Court granted preliminary class certification of the following Settlement Class:

> "Settlement Class" means a nationwide class of persons in the United States who have purchased, not for resale, Refrigerators, as defined in the Settlement Agreement, on or before January 29, 2014.  Excluded from the Settlement Class are:
>
> a)    Persons who purchased a Refrigerator for resale;
>
> b)    Persons who validly and timely exclude themselves from the Settlement Class, using the procedure set forth in Paragraph 5.3 of the Settlement;
>
> c)    Persons who have settled with and released LG US or Sears from individual claims substantially similar to those alleged in this Litigation or Persons who have had adjudicated claims substantially similar to those alleged in this Litigation;
>
> d)    Any officer, director or employee of LG US or Sears or their subsidiaries and affiliates;

---

[2] "Refrigerator Issues" is defined as problems associated with the ice fan, as evidenced by at least one of the following objective indicators:  an IF error code ("IF ER") in the control panel; low or no ice production; clogged ice systems; water leaking; the Refrigerator shutting off on its own; loud motor sounds; or ticking and grinding that goes away when the Refrigerator is shut off.  Doc. No. 44-33, Decl. Hartman at Ex. 1, Settlement Agreement at ¶ 1.26.

e)      The Judge(s) to whom the Litigation is or will be assigned; and

f)      Class Counsel, Defense Counsel, or any employee in their respective law firms. *Id.* at 44-33, Decl. Hartman at Ex. 1, Settlement Agreement at ¶ 1.31.

The term "Refrigerator(s)" means the LG Signature Model Refrigerators and Sears Kenmore Model Refrigerators, identified in Exhibit E attached to the Settlement Agreement, sold in the United States by LG US through its authorized retailers and by Sears, respectively. *Id.* at ¶ 1.25

### 3. Defendant LGE

Defendant LGE manufactured the LG Signature Model Refrigerators and Sears Kenmore Model Refrigerators identified in Exhibit E to the Settlement Agreement. *Id.* at 44-33, Dec. Hartman at Ex. 1, Settlement Agreement at Ex. E.

### 4. Class Counsel

Robert W. Thompson and Kathleen Hartman of Callahan, Thompson, Sherman & Caudill, LLP ("CTSC") were appointed as Class Counsel. *Id.* at 48 at ¶ 3.

## B. The Benefits Of The Settlement To The Class

### 1. Repairs

The Settlement requires LGE and Sears to make all repairs necessary to correct the Refrigerator Issues within 90 days after the Effective Date[3] of the

---

[3] The "Effective Date" is the Final Approval Date unless a Settlement Class Member files a timely Objection to the Settlement that is not withdrawn before the Final Approval Date. If a Settlement Class Member files a timely Objection to the Settlement that is not withdrawn before the Final Approval Date, then the Effective Date will be thirty-one (31) days following the Final Approval Date, unless the Settlement Class Member files a timely notice of appeal of the Settlement. If a Settlement Class Member who has filed a timely Objection to the Settlement also files a timely notice of appeal of

Settlement. *Id.* at ¶¶ 1.27 and 2.1. The repair benefit is subject to a Class Member submitting a timely Claim Form and requesting a repair. *Id.* If the repairs are not successful, and upon verification by LGE, the Class Member will have the option of receiving a $1,500 discount on the purchase of a new LGE or Sears Kenmore refrigerator or having further service and repair on his or her existing refrigerator. *Id.* at ¶ 2.1.

Repairs for Class Members who submitted Claim Forms are already underway. During the claims period, Class Counsel received numerous calls from class members whose refrigerators were not working and whose warranty had expired. Instead of requiring these individuals to wait for final approval of the Settlement before receiving a repair, the Parties worked together to set up expedited process to help these Class Members. Decl. Hartman at ¶ 3. These Class Members filled out a Claim Form and submitted it to the Settlement Administrator so that the repairs could be tracked under the Settlement. This allowed the Class Members to obtain immediate relief under the Settlement Agreement even though final approval had not yet been granted.

**2. Reimbursement for Property Damage and Spoiled Food**

Class Members who timely filed Claim Forms based on Refrigerator Issues had the opportunity to obtain reimbursement for out-of-pocket expenses or damages incurred in connection with spoiled food or other property damage; provided certain conditions are met. Doc. No. 44-33, Dec. Hartman at Ex. 1, Settlement Agreement at ¶ 2.2. The costs of repairs involving Refrigerator Issues

the Court's order approving the Settlement, then the Effective Date will be the date the appeal is dismissed or the Settlement is affirmed and no longer subject to further appellate review. *Id.* at ¶ 1.11. The "Final Approval Date" is the date on which the Final Approval Order is entered on the Court's docket. *Id.* at ¶ 1.13.

that a Class Member incurred when their warranty expired were included as part of this benefit. Decl. Hartman at ¶ 4. The reimbursement benefit is subject to a $5,000 cap per claim.

### 3. Warranty Extension

The Settlement also provides an extended limited warranty for Refrigerator Issues for one (1) additional year after the expiration of the Refrigerator's original one (1) year warranty (or following the expiration of an extended warranty in the event that one was purchased). Doc. No. 44-33, Dec. Hartman at Ex. 1, Settlement Agreement at ¶ 2.3. The Warranty Extension is limited to the costs of parts and labor for repairs necessitated by the actual manifestation of Refrigerator Issues. *Id.*

### C. Settlement Administrator and Administrative Cost

Strategic Claims Services ("SCS") was appointed to administer the Settlement. See Doc. No. 63, Declaration of Claims Administrator Re: Notice at ¶ 3; Doc. No. 44-33, Decl. Hartman at Ex. 1, Settlement Agreement at ¶ 1.3; Doc. No. 48, Order (1) Granting Preliminary Approval of Class Action Settlement and (2) Conditionally Certifying Proposed Settlement Class at ¶ 6. Under the Settlement, LGE pays for all cost of administration and there is no reduction in the amounts paid to Class Members for the cost of administration.

### D. Notice To The Class And To Attorneys' General

Class Members received notice of the Settlement through first class mail, electronic mail, and publication in *USA Today*. Doc. No. 63, Declaration of Claims Administrator Re: Notice at ¶¶ 5, 6, and 8. The total direct mail and email Notices sent were 305,004. *Id.* at ¶¶ 5 and 6. A settlement website was established so that Class Members could review the Settlement Agreement, obtain a summary of the benefits of the Settlement, obtain additional information, and obtain a Claim Form. *Id.* at ¶ 7. There were 14,340 total website visits as of the date SCS provided its Declaration Re: Notice. *Id.*

SCS also established a 24 hour toll-free number where Class Members could

receive additional information regarding the Settlement. *Id.* at ¶ 8. As of April 17, 2015, SCS received 1,832 calls regarding the settlement. *Id.*

Class Counsel received numerous inquiries via telephone and email regarding the settlement. Decl. Hartman at ¶ 3. Class Counsel worked with, and continues to work with, LGE to answer Class Member questions and to obtain the expedited repair process for Class Members who needed immediate repairs for their refrigerators. *Id.*

SCS also mailed notice of the Settlement to the States' Attorneys General via certified mail. Doc. 63, Declaration of Claims Administrator Re: Notice at ¶ 4.

### E.    Claim Forms Received

As of April 11, 2015, SCS had received 10,305 Claim Forms. Decl. Bravata. Of the Claim Forms received, 6,082 requested a repair only; 1,946 requested reimbursement only; and 2,277 requested reimbursement and repair.

### F.    Opt Outs

SCS received 26 requests for exclusion from the Settlement. Doc. 62; Declaration of Josephine Bravata Regarding Class Member Requests for Exclusion at ¶ 4.

### G.    Objections

There were four objections to the Settlement, one of which was later withdrawn. *Id.* at 53 - 55, 58, and 59. The Objections are addressed in a separate document filed concurrently with this Motion.

### H.    Class Representative Enhancement

The Settlement provides for a $5,000 enhancement to be paid to Ms. Clark for her time spent litigating this case and the risks involved with the litigation. Class Counsel LGE has agreed that it will not oppose this request. *Id.* at 44-33, Dec. Hartman at Ex. 1, Settlement Agreement at ¶ 7.2.

### I.    Attorneys' Fees And Costs

The Parties agreed that LGE would not oppose an order awarding attorneys'

fees of up to $359,444 and costs up to $8,206.40. *Id.* at ¶ 7.1

## IV.    THE SETTLEMENT SATISFIES FINAL APPROVAL CRITERIA

In order to grant final approval of a class action settlement, the Court must conclude from the facts presented that there was adequate notice given to the class and that the proposed settlement is fundamentally fair, adequate, and reasonable. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025-26 (9th Cir. 1998) "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is 'exposed to the litigants, and their strategies, positions and proof.'" *Id.* at 1026 *citing Officers for Justice v. Civil Service Com'n of City and County of San Francisco,* 688 F.2d 615, 626 (9th Cir. 1982). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Id.*  Although approval of pre-certification settlements, such as the one presented here, require a higher level of scrutiny (*see Id.*), "voluntary conciliation and settlement are the preferred means of dispute resolution." The Ninth Circuit has recognized the "overriding public interest in settling and quieting litigation," which is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir.1976); *see also Officers for Justice,* 688 F.2d at 625; *Utility Reform Project v. Bonneville Power Admin.,* 869 F.2d 437, 443 (9th Cir. 1989).  As such, it is the policy of the Ninth Circuit to defer to the "private consensual decision of the parties" when evaluating a settlement.  *Rodriguez v. West Publishing Corp.* 563 F.3d 948, 965 (9th Cir. 2009) *see also Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992) ("[S]trong judicial policy. . .favors settlements, particularly where complex class action litigation is concerned.")

In *Hanlon v. Chrysler*, the Ninth Circuit set forth the factors that determine the fairness of a proposed settlement:

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of

maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; [8] and the reaction of the class members to the proposed settlement.

*Hanlon,* 150 F.3d at 1026 *citing Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) and *quoting Officers for Justice* 688 F.2d at 625.

"The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice,* 688 F.2d at 625. This Settlement meets all of the required criteria.

### A. The Strength Of The Plaintiff's Case And The Risk, Expense, Complexity, And Likely Duration Of Further Litigation

Plaintiff believes that the claims asserted in the Second Amended Complaint in this action are meritorious. However, there are inherent risks in continued litigation. Prior to settlement, LGE had already filed two motions to dismiss as well as twice attempting to strike the class allegations. It was expected that LGE would also move for summary judgment/adjudication of the action and would strongly oppose class certification.

There are 305,004 potential Class Members. The discovery process for a case with this many Class Members was expected to be long and expensive. Plaintiff would need to retain experts to review design specifications as well as the refrigerators themselves. While the parties were engaged in discovery, motion practice, and ultimately trial, Class Members would be left with refrigerators that did not work, were out of warranty, and were expensive to repair. The longer the litigation lasted, the more Class Members there would be who would have to pay for repairs out of pocket or give up on their refrigerator all together without

receiving any compensation.

Even if Plaintiff was to successfully litigate this matter through trial, LGE would likely appeal. The appeals process is not only expensive, but it can take years before it is concluded. The fact that the Parties faced a long and expensive appeal of disputed issues weighs in favor of approval of a settlement. *Glass v. UBS Fin. Servs., Inc.,* 2007 WL 221862, at *4 (N.D.Cal.2007). Because of the delay inherent in the appeal process, it would become more difficult to locate Class Members and Class Members would incur additional costs associated with repair of their refrigerators, lost food, and property damage.

Accordingly, the inherent risk, expense, complexity, and likely duration of further litigation weigh in favor of granting final approval of this settlement.

**B.    The Risk Of Maintaining Class Action Status Throughout The Trial**

If the case was certified, it is likely that LGE would eventually move for decertification. The potential for decertification is always a possibility and is given weight in determining the risks involved with further litigation. *Rodriguez,* 563 F.3d at 966. Further, managing a class action with over 300,000 class members through trial raises complex management issues, especially in the nature of damages. Consequently, settlement provides a viable alternative that allows a significant number of Class Members to obtain relief that they may otherwise not been able to obtain.

**C.    The Benefits Of The Settlement**

The Settlement provides a broad range of relief to cover the various scenarios faced by Class Members including free repairs, reimbursement for certain damages, a warranty extension, and a potential $1,500 discount.

For Class Members who were experiencing problems with their refrigerator, the Settlement allows them to have their refrigerator repaired at no cost even though the refrigerator may be out of warranty. The repair benefit is a very

substantial one.  The actual value will obviously vary from customer to customer, depending on the time it takes to repair the refrigerator, the replacement parts required, and the geographic region of the country.  To date, 5,364 repair requests have already been submitted and approved.   An additional 718 repair requests are still being reviewed by the Claims Administrator.  Thus, - the value of the repair benefit itself would be a sufficient basis on which to approve the settlement.  Moreover, the importance of this benefit was immediately realized by Class Members during the Claims Period as the Parties worked together so that Class Members whose refrigerators were not working received expedited service.  Decl. Hartman at ¶ 3.

In addition to free repairs, if a Class Member was damaged due to Refrigerator Issues, the Class Member could receive up to $5,000 as compensation for certain property damages, subject to verification as set forth in the Agreement.  Up to $500 in spoiled food losses can be claimed without a receipt provided Class members submit a detailed declaration and proof that a contemporaneous complaint was made about Refrigerator Issues.

The Settlement also provides an additional year of warranty coverage.  The value of the repair and extended warranty benefit to each Class Member could range in the hundreds of dollars or even more depending on the experiences of the particular Class Member.  And finally, if LGE determines that a refrigerator cannot be repaired, the Settlement provides for a $1,500 credit towards the purchase of a new refrigerator.

This Settlement was reached after extensive and exhaustive arm's-length negotiations involving an experienced Magistrate Judge and mediator and the benefits available to the Class are significant.  Court have approved settlements that provided far less robust benefits:  "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628.  Instead, the

CTSC|law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

1   amount offered in settlement must be considered in light of the facts and

2   circumstances of the case.  *See id.; see also Hanlon*, 150 F.3d at 1026.  Under the

3   facts and circumstances of this case, the Class Members receive benefits under the

4   Settlement that are tangible, practical, and real and that support a finding that the

5   Settlement should be approved.

6           **D.**       **The Extent Of Discovery Completed And The Stage Of The**

7                   **Proceedings**

8           Significant legal issues were litigated in this case when LGE twice moved to

9   dismiss this entire action and strike the class claims.  In large part, LGE's motions

10  claimed that the causes of action based in fraud were not pled with sufficient

11  particularity and that the class could not be maintained.  The majority of the action

12  survived these attacks and Plaintiff was able to demonstrate she and other class

13  members had viable claims against LGE.

14          The parties participated in the court-ordered ENE shortly after the SAC was

15  at issue.  Doc. No. 36.   When a Settlement in principal was reached, LGE agreed

16  to provide confidential discovery regarding the refrigerators.  As held by the Ninth

17  Circuit and other Circuits, "[i]n the context of class action settlements, 'formal

18  discovery is not a necessary ticket to the bargaining table' where the parties have

19  sufficient information to make an informed decision about settlement."  *Linney v.*

20  *Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) *citing In re Chicken*

21  *Antitrust Litig.,* 669 F.2d 228, 241 (5th Cir.1982).  Significant information in this

22  case was available to make an informed decision about settlement.

23          Prior to commencement of this action, Plaintiff already knew much of the

24  problems with the refrigerator as she had experienced *numerous* issues, had her

25  refrigerator replaced, suffered property damage as a result of the refrigerator, and

26  experienced spoiled food.  Internet postings by other consumers indicated that their

27  experiences were similar to Plaintiff's experiences.  The most significant

28  difference between members of the Class would be the amount of damages

suffered by each Class Member. By allowing each Class Member to make a claim as to the amount of damage that he or she actually suffered, the Settlement provides a reasonable basis to satisfy the damage differences and address the needs of the Class Members. Also, the Class Members could obtain reimbursement under the Settlement for the cost of out of warranty repairs that they already incurred. Decl. Hartman at ¶ 4.

**E.     The Experience And Views Of Counsel**

Unless there is evidence of fraud or collusion, courts generally refuse to substitute their judgment for that of counsel. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel"); *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976) ("Courts usually refuse to substitute their business judgment for that of counsel, absent fraud or overreaching.") In fact, "the recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.).

Class Counsel believes that the Settlement is fair and reasonable under the circumstances of this litigation. As part of the settlement process, Class Counsel and the Class Representative tried to fashion a settlement that would address as many of the Class Member's experience as reasonably possible. Decl. Hartman at ¶ 5. Class Counsel and the Class Representative also knew that the longer this litigation continued the more expenses the individual Class Members would incur. *Id.* The warranty for some Class Members had expired so absent a settlement they would have to pay for repairs out of pocket. Further, each time the refrigerator broke down there was the potential for spoiled food and property damage, which would further cost the Class Members. There was also the chance that some Class

CTSC|law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

1  Members might just give up on the refrigerator and buy a new one at full price.

2  However, because of the Settlement, LGE established a method to prioritize the

3  repairs of those Class Members whose refrigerators are not working at all. *Id.*

4  Further, none of the Class Members had to pay anything in attorneys' fees and

5  costs to receive their benefits under this Settlement.  Given all of these factors,

6  settlement of the litigation on the terms agreed upon is an excellent result for the

7  Class.   *Id.*

8  That this settlement is the product of arm's-length negotiation is evidence by

9  Class Counsel's vigorous prosecution of this action, LGE's equally vigorous

10  defense, the ENE before the Magistrate Judge, the months spent negotiating the

11  Settlement with the participation of a respected mediator who is a retired district

12  court judge, and the substantial benefits provided to the Class.  Accordingly, the

13  Class Representative and Class Counsel request that the Settlement receive final

14  approval.

15  **F.  Governmental Agencies Did Not Object To The Settlement**

16  Pursuant to the requirements of CAFA, the Parties were required to provide

17  notice to Federal and State officials of this Settlement.  28 U.S.C. § 1715.  The

18  Claims Administrator provided the appropriate notice on November 7, 2014.  Doc.

19  No. 63, Declaration of Claims Administrator Re: Notice at ¶ 4.  No objections or

20  responses to the notification were received.  Decl. Hartman at ¶ 6.

21  **G.  The Reaction Of The Class Members To The Proposed Settlement**

22  The reaction of the Class Members has been positive, as evidenced by the

23  significant number of claims submitted.  As of April 11, 2015, 10,305 claims were

24  filed with SCS.  Of the total, 6082 claims requested repair only, 1946 claims

25  requested reimbursement only, and 2277 claims requested repair and

26  reimbursement.   Decl. Bravata.

27  The claims rate in this case (approximately 4%) is in line with other

28  approved settlements with similar claims rates.  (See *Evans v. Linden Research,*

- 15 -

*Inc.* 2014 WL 1724891 (N.D. Cal. 2014) (granting final approval with 4.3% claims rate) (citing *Moore v. Verizon Commc'n Inc.* 2013 WL 4610764) granting final approval with 3% claims rate)): *Shames v. Hertz Corp.* 2012 WL 5392159 (granting final approval with 4.9% claims rate) (citing *Towheyy v. United States*, 2011 WL 3179036 (C.D. Cal. July 25, 2011) (finding 2% claims rate did not militate against final approval because, inter alia, settlement was fair to class members)). In the present case, the reason that some people may not have made a claim is because they did not experience the Refrigerator Issues or they experienced them but they were repaired under warranty with no further issues. *See e.g* Doc. No. 62, Declaration of Josephine Bravata Regarding Class Member Requests for Exclusion, pp. 13, 21, 22, 28, and 30. Those who did experience problems and suffered monetary loss or needed a repair were able to make claims and benefit from the Settlement.

When a class action settlement receives few opt outs or objections, courts typically find that the reaction to the settlement by class members is favorable. *In re Mego Financial Corp. Securities Litigation,* 213 F.3d 454, 459 (9th Cir. 2000) (finding that one opt out from a pool of 5,400 potential class members indicates a favorable reaction to the settlement); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (finding that a court may infer a class action settlement is fair, adequate and reasonable when few class members object to it). There were only 26 requests for exclusion from the Settlement (approximately .00008% of the class). Doc. No. 62, Declaration of Josephine Bravata Regarding Class Member Requests for Exclusion at ¶ 4. Similarly, there were only three individuals who objected to the Settlement (approximately .000009% of the class). Importantly, none of the objectors found any problems with the Class Counsel or the enhancement payment. Instead, two of the Objectors wanted life time warranties for the refrigerators while the third wanted a complete refund, including taxes and warranty payments. As discussed further in Plaintiff's Response to Class Member

Objections, these remedies would not even be available if Plaintiff and the Class were to prevail all the way through trial and appeal of this matter. In all, the response by the Class supports approval of the Settlement.

### H.    The Notice To Class Members Was Adequate

Due process requires that reasonable notice of the settlement be given to all potential class members. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). Notice via "first-class mail and publication regularly have been deemed adequate under the . . . notice requirements . . . of Rule 23 (c)(2)." *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86 (3d Cir. 1985). A combined notice process of direct notice to known addresses and publication notice to unknown addresses is deemed to be sufficient notice. *See e.g. In re Agent Orange Product Liability Litigation*, 818 F.2d 145, 169 (2d Cir. 1987); *Wilson v. Airbourne, Inc.*, 2008 WL 3854963 *4-5. Here, all customers for whom LGE has contact information were sent notice via U.S. mail or email, totaling 305,004 individuals. Doc. No. 63, Declaration of Claims Administrator Re: Notice at ¶¶ 5 and 6. Notice was also made through publication as required by the Preliminary Approval Order. *Id.* at ¶ 8. Consequently, the notice provisions satisfy the due process requirements.

### I.    The Enhancement To The Class Representative Is Appropriate

It is appropriate to provide compensation to the Class Representative for her service to the class. *Van Vranken v. Atlantic Richfield Co.,* 901 F.Supp. 294, 299 (N.D. Cal. 1995). The following factors can be considered when determining approval of enhancements to named plaintiffs: "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . .[and] the amount of time and effort the plaintiff expended in pursuing the litigation . . ." *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003) The Settlement provides for payment of $5,000.00 to Ms. Clark. Doc. No. 44-33, Decl. Hartman at Ex. 1, Settlement Agreement at ¶ 7.2. This payment does not reduce the amount of funds available to the Class. *Id.*

Ms. Clark was very involved in this litigation.  Decl. Hartman at ¶ 7.  She researched complaints by LGE consumers before the complaint was filed, provided documents to counsel, was available to answer questions from counsel, participated in the ENE and mediation, reviewed litigation documents, provide a declaration, and reviewed the multiple iterations of the Settlement Agreement. *Id.*; Decl. Clark at ¶¶ 3 and 4.  In all, Ms. Clark estimates that she spent 38 hours on the litigation of this matter.  *Id.* at ¶ 4.  Ms. Clark owns her own business and is the sole person who generates revenue for the business.  *Id.* at ¶ 5.  When she was spending time working on this case she was not generating revenue for the business and not being paid.  *Id.*  Additionally, Ms. Clark assumed the risks inherent in bring litigation.  This included the possibility of an adverse ruling and being responsible for the prevailing party's costs.

Ms. Clark, like all of the Class Members, needed to submit a claim form in order to receive the benefits of the Settlement.  *Id.* at ¶ 8.  She experienced spoiled food and property damage and felt the benefits offered by the Settlement were fair to the Class Members. *Id.* at ¶¶ 2 and 9.

The requested incentive payment of $5,000.00 to Ms. Clark is reasonable given her involvement in the case and well within the range of payment that others have received for similar services.  *See e.g. Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240 (S.D. Ohio 1991) (awarding $50,000 to each class representative); *Van Vranken v. Atlantic Richfield Co.,* 901 F.Supp. 294 (N.D. Cal. 1995) (award of $50,000 to the class representative); *Aamco Automatic Transmission v. Tayloe,* 82 F.R.D. 405 (E.D. Pa. 1979) (additional award for class representatives providing expert services); *see also Gabel et al. v. Oracle Corporation, et al.,* SACV03-348AHS(MLGx), (awarding $25,000 to each class representative in an unpaid overtime lawsuit).  Therefore, Class Counsel requests this Court award Ms. Clark $5,000 as an enhancement for her work on this case.

**J.     The Proposed Attorneys' Fees Are Reasonable And Appropriate**

In approving the settlement, the Court must consider whether the award of attorneys' fees is "fundamentally fair, adequate and reasonable." Fed. R. Civ. Proc. 23 (e). Class Counsel requests an award of $359,444 in attorneys' fees and $8,206.40 costs. Doc. No. 44-33, Decl. Hartman at Ex. 1, Settlement Agreement at ¶ 7.1. The payment of this amount does not reduce the amount available to the Class and is exceedingly fair and reasonable given the complexity of the proceedings, the issues involved, the time spent by Class Counsel in the litigation of this case, the fact that the amount was agreed upon by the parties, and the results obtained.

In class action settlements in this Circuit, attorneys' fees may be awarded either on a lodestar basis or as a percentage of the common fund. *Hanlon,* 150 F.3d at 1029. "[T]he choice between lodestar and percentage calculation depends on the circumstances, but ... 'either method may ... have its place in determining what would be reasonable compensation for creating a common fund.'" *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268 (9th Cir.1989). Indeed, the Ninth Circuit has made clear that "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990). In this case, Class Counsel is requesting fees according to a lodestar calculation because this Settlement is not based on a common fund.

As of the date of this motion, Class Counsel will have spent a total of 521.60 hours[4] on this matter and is continuing to spend time responding to Class Member

---

[4] The breakdown of these hours is included in the Declaration of Kathleen Hartman filed concurrently with this motion.

inquiries. Decl. Hartman at ¶ 13. Class Counsel has also incurred $7,276.97 in costs to date. *Id.* at ¶ 10. Class Counsel anticipates spending additional time and incurring additional costs during the verification process of the Claims by the Settlement Administrator, attending the hearing on this motion, and ensuring the Class Members receive the benefits of the Settlement. *Id.* at ¶ 14; Doc. 44-33, Decl. Hartman at Ex. 1, Settlement Agreement at ¶¶ 4.4 – 4.7, and 4.11. Consequently, even after final approval of this Settlement, Class Counsel will have continued obligations to the Class in order to ensure the terms of the Settlement are fulfilled.

In *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983), the Supreme Court stated: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." Here, the Parties met the standard the Supreme Court found as the ideal in that Class Counsel agreed not to request more than $367,650.10 for attorneys' fees and costs and Defendant agreed to not oppose this request. Doc. No. 44-33, Decl. Hartman at Ex. 1, Settlement Agreement at ¶ 7.1. The Class benefits from this agreement between the Parties because the payment of attorneys' fees and costs does not reduce the amount of funds available to pay Class Members' claims. The Parties negotiated this amount only after the amount and type of class relief was agreed upon. Doc. No. 44-5, Decl. Thompson at ¶ 13; Doc. 44-2, Decl. Hartman at ¶ 10. These factors weigh strongly in favor of finding the amount of fees "fundamentally fair, adequate and reasonable." Fed. R. Civ. Proc. 23 (e); *Staton,* 327 F.3d at 963.

An award of attorneys' fees and costs for this litigation is also supported statutory law. If this matter had gone to trial and Plaintiffs' prevailed, Class Counsel would be entitled to recovery of attorneys' fees and costs under the California Consumer Legal Remedies Act, California Civil Code § 1780 (e); California Civil Code section 1794(d); and for conferring a benefit on the general public pursuant to California Code of Civil Procedure § 1021.5. Although Class

Counsel was ready, willing and able to pursue this action through trial, it determined that settlement was in the best interests of the Class and that this particular settlement offered substantial benefit to the Class.

The benefits conferred upon the public and the Class as a result of this litigation are large. Because of the Settlement, Class Members who were out of warranty are able to have their refrigerators repaired at no charge. Depending on the type of repair needed and location of the Class Member, this benefit could result in hundreds of dollars in savings. Additionally, Class Members who lost food or experienced property damage could obtain monetary relief up to $5,000 provided certain conditions designed to protect against fraud were met. This is a significant amount of money that most Class Members would not have been able to recover absent this litigation. Class actions of this nature help keep large corporations from taking advantage of consumers by offering substandard goods. Here, the Settlement, even though it had not yet received final approval, caused LG to establish an expedited method for repairs of refrigerators that are not currently working regardless of whether the refrigerator was under warranty. Decl. Hartman at Ex. B. Attorneys' fees and costs are recoverable when an action results in the enforcement of an important right affecting the public interest. Cal. Code Civ. Proc. § 1021.5; *Vasquez v. State of Cal.*, 45 Cal.4th 243, 250; *see also Ass'n of Cal. Water Agencies v. Evans,* 386 F.3d 879, 885 (finding that attorneys' fees are appropriate when the litigation brought about voluntary change by defendant under a catalyst theory if plaintiff maintains a cause of action for damages).

Additionally, Class Counsel took this case on a contingency fee basis. Decl. Hartman at ¶ 15. This case was initially filed December 12, 2012. Since the inception of the case, Class Counsel has expended a significant amount of hours and incurred expenses in litigating the matter, but has not received any compensation or reimbursement for more than two years. *Id.* The contingent nature of this case meant that Class Counsel assumed the risk of potentially not

receiving any recovery for its work. Additionally, while working on this case, Class Counsel was not available to work on other matters. Efforts of this nature warrant an award of attorneys' fees and costs. *See Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1377 (9th Cir. 1993) (finding that Class Counsel was entitled to recover an amount greater than their lodestar based on the contingent nature of the litigation and their efforts).

Class Counsel believes the total amount requested is reasonable given the nature of this litigation and requests this Court grant an award of attorneys' fees and costs of $367,650.10.

# VI. CONCLUSION

Based on the foregoing, Plaintiffs request this Court grant final approval of this Settlement.

DATED: May 4, 2015

**CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP**

By      */s/ Kathleen M. Hartman*
        KATHLEEN M. HARTMAN
        Attorneys for Plaintiff
        **JEANNETTE CLARK,** individually
        and on behalf of the class

G:\PLF\0120013\Mtns\Mt Final Approval\MFA Ps&As.doc

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically and notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's EM/ECF System.

May 4, 2015                           */s/ Kathleen M. Hartman*
                                       Kathleen M. Hartman